No. 22-16514

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<hr>

HADONA DIEP, *et al*.,

      *Plaintiffs- Appellants*,

         v.

APPLE, INC,

      *Defendant-Appellee.*

<hr>

APPEAL OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF

NORTHERN CALIFORNIA CASE NO. 4:21-CV-10063-PJH

BRIEF OF THE APPELLANTS

SUBMITTED BY:

ADELPHI LAW
JOSHUA WHITAKER
whitaker@adelphilaw.com
2306 Wineberry Terrace
Baltimore, MD 21209
Telephone: (888) 367-0383
Facsimile: (888) 367-0383

*Attorney for Appellants Hadona Diep, Ryumei Nagao, and the putative class*

# TABLE OF CONTENTS

I.  JURISDICTIONAL & PROCEDURAL STATEMENT                                1

II.  ISSUES PRESENTED FOR APPELLATE REVIEW                               2

III.  STATEMENT OF THE CASE                                             3

IV.  LEGAL STANDARD                                                     6

    STANDARD ON REVIEW                                             7

V.  ARGUMENT                                                           8

    A.  SUMMARY OF THE ARGUMENT                                    8

    B. *The Communications Decency Act Does Not Immunize Apple
for its Own Misrepresentations*                                        9

    C.  *The District Court's Mistaken Limitation of Immunity for
Violations of Criminal Statutes*                                       15

    D. *The Court Erred in Providing Blanket Immunity for the State
Law Claims, Which Were Properly Plead, Even Under a Heightened
Pleading Standard*                                                     18

    E.  *Under California Law, the Terms Cannot Shield Apple
from its Own Conduct*                                                  24

    F.  *The District Court Committed Error When it Failed to Consider or Allow
Possible Amendments of the Pleadings*                                  26

VI.  RELIEF REQUESTED                                                  28

    Certificate of Service                                         29

    Certificate of Compliance                                     30

i

# TABLE OF AUTHORITIES

## Cases

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009)...................................................................9-10, 13

*Barrett v. Apple Inc.,*
   523 F. Supp.3d 1132 (N.D. Cal. 2021)...................................................25

*Barrett v. Apple Inc.,*
   No. 5:20-CV-04812-EJD, 2022 WL 2119131 (N.D. Cal. June 13, 2022)..........25

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................6-7

*Cahill v. Liberty Mutual Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996).................................................................6, 7

*Carafano v. Metrosplash.com, Inc.,*
   339 F.3d 1119 (9th Cir. 2003)......................................................11, n. 2

*Chang v. Chen,*
   80 F.3d 1293(9th Cir. 1996).............................................................8, 27

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F. 3d 1048 (9th Cir. 2003)..............................................................27

*Epic Games, Inc. v. Apple, Inc.,*
   No. 4:20-cv-05640, 2021 WL 4128925 (N.D. Cal. Sept. 10, 2021).............4-5, 14

*Firestone Tire & Rubber Co. v. Risjord,*
   449 U.S. 368, 373 (1981).......................................................................2

*Foman v. Davis,*
   371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)...............................27

*Gonzales v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021)..........................................................15, 19

*Gutierrez v. Carmax Auto Superstores California*,
  19 Cal.App.5th 1234 (2018), *as modified* (Feb. 22, 2018)..................23

*Health Net of California, Inc. v. Dep't of Health Servs.*,
  113 Cal.App.4th 224 (2003)...................................................25

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009)..........................................................n. 1, 21, 22

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
  701 F.2d 1276 (9th Cir.1983).................................................27

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal.App.4th 1342 (2012)................................................22

*Lee v. City of Los Angeles*,
  250 F. 3d 668 (9th Cir. 2001) ..........................................8, 27

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir.2002)................................................7

*McGill v. Citibank, N.A.*,
  2 Cal.5th 945 (2017).............................................................26

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001)................................................7

*Nowak v. Xapo, Inc.*,
  Case No. 5:20-cv-03643-BLF,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)...............................17

*Opperman v. Path, Inc.*,
  87 F. Supp.3d 1018 (N.D. Cal. 2014)...................................13

*Pirozzi v. Apple, Inc.*,
  913 F. Supp.2d 840 (N.D. Cal. 2012)......................................12, n. 2

iii

*San Miguel v. HP Inc.*,
  317 F. Supp.3d 1075 (N.D. Cal. 2018)...................................................16

*Schneider v. California Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998)...................................................8, 27

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir.1986)...................................................27

*Shamrock Foods Co. v. Gast*,
  535 F. Supp.2d 962 (D.Ariz.2008)...................................................15

*Twitter, Inc. v. Taamneh*,
  598 U.S. ___ (2023)...................................................20

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001)...................................................7

*United States v. Iyamu*,
  356 F. Supp.3d 810 (D. Minn. 2018)...................................................n. 3

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012)...................................................15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F. 3d 1097 (9th Cir. 2003)...................................................7

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008)...................................................22

*Yamaguchi v. U.S. Dept. of the Air Force*,
  109 F.3d 1475 (9th Cir. 1997)...................................................7

## Statutes & Rules

18 U.S.C. § 1030...................................................1, 3, 16

18 U.S.C. § 2510.................................................................................3

28 U.S.C. § 1291.................................................................................2

28 U.S.C. § 1332(d).............................................................................1

28 U.S.C. § 1367.................................................................................1

28 U.S.C. § 1391(b).............................................................................1

47 U.S.C. § 230(c)(1)...................................................................*passim*

Cal. Bus. & Prof. Code § 17200.........................................................3

Cal. Civ. Code § 1668....................................................................24, 25

Cal. Civ. Code § 1750.........................................................................3

Cal. Civ. Code § 1751........................................................................26

Cal. Civ. Code § 1798.100..................................................................3

Cal. Civ. Code § 1798.192................................................................26

Cal. Civ. Code § 3513......................................................................25

Fed. R. Civ. Proc. 12(b)(6)..............................................................6, 7

Fed. R. Civ. Proc. 8(a)(2)................................................................6-7

Fed. R. Civ. Proc. 8(f).......................................................................7

Fed. R. Civ. Proc. 9(b)........................................................2, 7, 9, 18, 20, 21

Md. Code Ann., Comm. Law Art. § 13-101..............................................3

Md. Code Ann., Comm. Law Art. § 13-103(a).........................................26

Md. Code Ann., Comm. Law Art. § 14-3501............................................3

Md. Code Ann., Wiretap & Electronic Surveillance Act § 10-402(a)......................3

# I.  JURISDICTIONAL & PROCEDURAL STATEMENT

A.  Jurisdiction was and is proper in the United States District Court as the Appellants brought Federal causes of action pursuant to 18 U.S.C. § 1030(g) and 47 U.S.C. § 230(e)(4).  The United States District Court had and has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

B.  Jurisdiction was and is further proper under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because, on information and belief, the proposed Class(es) consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

C.  The United States District Court had and has personal jurisdiction over the Apple, who has availed itself of the jurisdiction of the United States District Court for the District of California through acts and omissions, including but not limited to, having its principal place of business in the District of California, advertising its services in this District, selling products and services to consumers in this District, and by otherwise conducting business in this District; furthermore, various agreements between the Parties and the Class select the Courts of this State as the proper forum for all disputes.

D.  Venue was and is therefore proper in this forum pursuant to 28 U.S.C. § 1391(b), and further, as the Defendant is located in this judicial district and/or a

substantial part of the acts or omissions giving rise to the claims herein occurred in the same.

E.  On September 22, 2022, the District Court granted Apple's Motion to Dismiss, dismissing all claims with prejudice.  ER-147 (Order, Sept. 2, 2022), at 14 (hereinafter, the "Order").

F.  Plaintiffs (hereinafter, referred to collectively as "Diep") appealed the Order on October 1, 2022, within the thirty-day requirement of Federal Rules of Appellate Procedure Rule 4(a).

G.  This Court has jurisdiction over this timely appeal under 28 U.S.C. § 1291, which gives the Ninth Circuit jurisdiction over "all final decisions of the district courts … except where a direct review may be had in the Supreme Court." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981).

## II.  ISSUES PRESENTED FOR APPELLATE REVIEW

1.  Did the District Court err when it applied the immunity of the Communications Decency Act ("CDA") to shield Apple from liability from its own statements?

2.  Did the District Court err when it applied the heightened pleading standard of F.R.C.P. Rule 9(b) to Diep's consumer protection claims, and were Diep's claims properly pled?

3.  Did the District Court err when it held that the limitation of liability provision in

Apple's Terms & Conditions barred all of Diep's claims, even though those Terms did not apply to Apple's own conduct, and/or were limited in their application by California law?

4. Did the District Court err when it conclusorily held that no amendment could cure the alleged pleading failures?

## III. STATEMENT OF THE CASE

Diep, brought claims on their own and on behalf of similarly-situated persons against Apple, Inc. ("Apple"), for violations of the Computer Fraud & Abuse Act, 18 U.S.C § 1030, *et seq*. (Count I), violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. (Count II), violations of the California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100, *et seq*. (Count III), violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (Count IV), violations of Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. (Count V), interception and disclosure of electronic communications in violation of Maryland Code, Wiretap & Electronic Surveillance Act § 10-402(a) (Counts VI & VII), violation(s) of the Maryland Personal Information Protection Act, Maryland Annotated Code, Commercial Law, § 14-3501, *et seq.* (Count VIII), violation(s) of the Maryland Consumer Protection Act, Maryland Code, Code, Commercial Law, § 13-101, *et seq*. (Count IX), and

negligence (Count X), related to Apple's part in certifying the safety of the "App Store," and then in authorizing and negligently distributing a spoofing application in that same store, the "Toast Plus" application.

Diep alleged that Apple, by maintaining a long-standing campaign of intentional and deliberate representations touting that the App Store is a "safe and trusted place," caused the Plaintiffs and the Class Members to trust the products that were offered in the App Store. In fact, Apple has engaged in a long-standing campaign of representing that its App Store is "a safe and trusted place" and that Apple "[ensures] that the apps we offer are held to the highest standards for privacy, security, and content. Because we offer nearly two million apps — and we want you to feel good about using every single one of them." ER-4 (First Amended Complaint ("FAC")), ¶ 2, ER-6 (*id.*), ¶ 14-17.

Apple controls what apps may be sold or provided to consumers through the App Store by a rigorous vetting process that involves provision of the proposed apps' purpose and a copy of the app itself and any relevant source code, users' guides, and software documentation. *Id.,* ¶ 18. And Apple customers have no other practical or convenient manner in which to download applications for their iPhones or iPads, as Apple maintains rigorous control over applications that can be placed on their devices. ER-6 (*Id.*), ¶ 19; *see also Epic Games, Inc. v. Apple, Inc.*,

No. 4:20-cv-05640, 2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) (reiterating

Apple's representation that "[a]ll apps on the App Store are subject to, and must

comply with, [ ] guidelines to 'address issues of safety, privacy, performance, and

reliability' of all apps made available through the App Store.).

Diep, having seen and reasonably relying on Apple's guarantees, and

extensive advertising, that the App Store was "a safe and trusted place,"

downloaded what she believed to be a legitimate cryptocurrency wallet, the "Toast

Plus" application, and transferred cryptocurrency to what she thought was her

personal, secure wallet. Unfortunately, Apple's representations of "safety and

security" have proved inaccurate, and the "Toast Plus" app was actually a

"spoofing" / "phishing" program that was designed solely to steal her (and other

consumers') cryptocurrency.

Diep further alleged that Apple knew or should have known of the fraudulent

purpose of the Toast Plus application, and failed to take remedial action, causing

harm to the Plaintiffs and the Class.  ER-4 (FAC), ¶ 2.  As alleged, Apple knew of

the true fraudulent purpose of the Toast Plus app before allowing it to be

distributed on the App Store, since Apple "vetted" the application prior to allowing

it to be distributed on the App Store, or, alternatively, came to know of the Toast

Plus app's true purpose soon after distributing it, but failed to notify Apple's

5

customers about the danger.  ER-6 (*id.*), ¶ 18, ER-12 (*id.*), ¶¶ 50-51.  Apple also allowed the application developer in this case to use a name and logo of a legitimate cryptocurrency wallet provider, Toast Wallet, thereby misleading Diep and reinforcing Apple's misrepresentations as to safety and security.  ER-7 (*id.*), ¶ 23.

Procedurally, this matter was filed in the United States District Court for the District of Maryland and transferred to the Northern District of California pursuant to the Terms and Conditions of Use for Apple, Inc. (hereinafter, the "Terms").  On August 4, 2022, the District Court, Hon. Phyllis Hamilton, J., Presiding, heard oral argument on Apple's Motion to Dismiss the First Amended Complaint.  ER-120 (Transcript).  As noted above, the District Court granted Apple's Motion and dismissed the FAC, with prejudice, on September 2, 2022.

## IV.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all factual allegations set forth in the complaint, as well as all reasonable inferences to be drawn from them.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  A well-pleaded complaint need only set forth a short and plain statement of the claim showing that the pleader is plausibly entitled to relief. Fed. R. Civ. Proc.

8(a)(2); *Twombly*, *supra*, at 555. As the Supreme Court has explained, showing

plausible grounds for recovery does not require a showing that recovery is

probable. *Id.* at 556.

A motion to dismiss challenges only the legal sufficiency of the complaint.

Dismissal is proper only where insufficient facts are alleged to support a

cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A

complaint should not be dismissed unless a plaintiff can prove no set of facts in

support of their claim which would entitle them to relief. *Cahill, supra*, 80 F.3d at

339. In reviewing the allegations, the Court is required to construe the complaint

"with the utmost liberality" to determine whether a cause of action has been stated.

Fed. R. Civ. Proc. ("FRCP") Rule 8(f); *Yamaguchi v. U.S. Dept. of the Air Force*,

109 F.3d 1475, 1480-81 (9th Cir. 1997).

## STANDARD ON REVIEW

In the Ninth Circuit, dismissals under Rules 9(b) and 12(b)(6) are reviewed

*de novo*. *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1102 (9th Cir. 2003)

(citing *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051

(9th Cir. 2001); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir.2002)).

Furthermore, "[u]nder [9th Circuit] case law, 'dismissal without leave to

amend is improper unless it is clear, upon *de novo* review, that the complaint could

not be saved by any amendment.'" *Lee v. City of Los Angeles*, 250 F. 3d 668, 692

(9th Cir. 2001) (quoting *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir. 1996); citing

*Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1196 (9th Cir. 1998)).

## ARGUMENT

### A. *Summary Of The Argument*

The District Court committed reversible error when it applied Section 230(c)

(1) of the Communications Decency Act to Apple's own representations of safety

and fitness of applications downloaded from the App Store, representations that

Diep and others relied upon before downloading a "spoofing" application from the

App Store and thereafter losing all of her cryptocurrency.  The District Court

focused on Apple's unproven and unsubstantiated representation to the court that it

had nothing to do with the creation and coding of the Toast Plus application, an

application that mimicked an industry-known cryptocurrency wallet in name and

avatar, and that was vetted and approved by Apple prior to distributing it through

its proprietary App Store.  The District Court even said that the only major issue

was whether Apple was a publisher as to the Toast Plus application, ignoring

Apple's own representations, and used that misconstruction to apply blanket

immunity to Apple for essentially all of the claims made by Diep, even those that

were exempt from application of the CDA's immunity.  Because this analysis

ignores the actual allegations made in the FAC, the District Court misconstrued

both the facts and the law of the case, and its decision should therefore be reversed.

The District Court committed two-fold error as to the heightened pleading

standard of FRCP Rule 9(b) -first, the District Court was in error that the

heightened pleading standard should be applied to the California state-law claims,

as that is contrary to the consumer-protection caselaw of that State, which the

District Court was obligated to apply.  Second, even if the Rule 9(b) standard was

correctly applied, the District Court simply ignored that Diep had in fact properly

pled the "'the who, what, when, where, and how" of Apple's misrepresentations.

The District Court further misconstrued the alleged facts and the law in

finding blanket immunity for Apple from "third party conduct" under the Terms, a

holding which is contrary to California law, the alleged facts, and the Terms

themselves.

Finally, the District Court ignored the clear law of this Circuit when it

conclusorily found that no amendment could rescue the allegations, a holding

supported by no analysis of any kind.

B. *The Communications Decency Act Does Not Immunize Apple for its Own*

*Misrepresentations*

In Section A of the Order, the District Court analyzed the *Barnes* test for

applicability of the Section 230(c)(1) immunity defense raised by Apple. ER-154 - ER-155 (Order at 8-9) (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)). Critical here, and where the District Court departed from the allegations in the First Amended Complaint, is the District Court's analysis of the second prong of the *Barnes* test, "whether plaintiffs' allegations show that plaintiffs seek to treat Apple as a publisher or speaker with respect to content on the App Store." ER-154 (Order, 8). The District Court adopted Apple's argument, almost in its entirety, that Apple was merely acting as a publisher, and focused on Diep's secondary allegations of improper vetting of those applications. *See* ER-137 (Tr. at 18), lines 2-4 ("The Court: I mean because Apple's involvement essentially was hosting this app on the App Store, making it available for purchase."). This is an inaccurate portrayal of the allegations made by Diep. The bulk of the allegations in the First Amended Complaint alleged not that Apple was acting as a publisher of other's content, but, rather, that Apple must be held liable for its own misrepresentations as to the safety and security of the apps in the App Store.

Because the District Court appears to have fully adopted Apple's argument even before oral argument, the District Court was unaware of what Apple's alleged misrepresentations even were:

THE COURT: -- [ . . . ] Now where would I find -- where would I find any sort of guarantee that everything that's sold in the App Store is legitimate?
MR. CONN: That -- on the front of the App Store.
THE COURT: On the front of the App Store?
MR. CONN: Yes, apple.com/app-store. The representation that's set forth in paragraph 14 is the first block of text.
"For over a decade, the App Store has proved to be a safe and trusted place to discover and download apps. But the App Store is more than just a storefront, it's an innovative destination focused on bringing you amazing experiences. And a big part of those experiences is ensuring that the apps we offer are held to the highest standards for privacy, security, and content. Because we offer nearly 2 million apps, and we want you to feel good about using every single one of them."

ER-137 (*id.*), at 18, lines 9-25.[1]

Because the District Court ignored the actual allegations and focused on Apple's construction of those allegations, it was unavoidable that the District Court would also misconstrue the law. Section 230 "immunity" does not apply if Apple "created or developed the particular information at issue." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003). Here, Apple created the representation at the front of the App Store, and the First Amended Complaint's

---

[1]. It is well-established that representations made in advertising campaigns can be the basis of liability for the publisher, even when a claimant does not have the ability to point to a particular advertisement that she or he saw. *See In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009) ("where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements"); *see also* ER-6 (FAC), ¶¶ 16, 17.

Unfair Competition Law ("UCL") (Count IV), Consumers Legal Remedies Act ("CLRA") (Count V), Maryland Consumer Protection Act ("MCPA") (Count IX), and negligence (Count X) claims are all predicated *solely* on Apple's own misrepresentations. ER-18 (FAC), ¶¶ 93-95, ER-19 – ER-20 (*id.*), ¶¶ 102-103, ER-25 (*id.*), ¶¶ 147-149, 155.

Other judges in the Northern District of California have rejected the exact theory that Apple brought (and Judge Hamilton adopted) here. In *Pirozzi v. Apple, Inc.*, 913 F. Supp.2d 840 (N.D. Cal. 2012), District Court Judge Yvonne Gonzalez Rogers rejected the argument that Apple re-raised before the District Court, noting that:

> Apple's arguments, however, misconstrue the nature of certain of the allegations in the CAC. Plaintiff's claims are not predicated solely upon Apple's approving and distributing Apps via its online App Store; Plaintiff also seeks to hold Apple liable for representations made by Apple itself. As Apple acknowledges, Plaintiff's claims include "allegations that Apple somehow misled Plaintiff as to the 'nature and integrity of Apple's products.'" To the extent that Plaintiff's claims allege that Apple's misrepresentations induced Plaintiff to purchase an Apple Device, those claims do not seek to hold Apple liable for making Apps available on its website. In that context, even if Apple acts as an "interactive computer service," Plaintiff seeks to hold it liable as the "information content provider" for the statements at issue.

*Id*. at 849.

Consistent with Judge Gonzalez Rogers' ruling, in other litigation in this

judicial district, Apple has accepted that reasoning to be correct. For example, it did not challenge the misrepresentation claims in *Opperman v. Path, Inc.*, 87 F. Supp.3d 1018, 1044 (N.D. Cal. 2014) ("Apple expressly excludes from its CDA argument any application to Plaintiffs' fraud and misrepresentation claims, in recognition of Judge Gonzalez Rogers' first conclusion.").

Despite this, before the District Court, Apple deliberately misconstrued the allegations in the FAC, and focused instead on the application review process and the fact that Toast Plus was created by a third-party.[2] And the District Court adopted those arguments without any further analysis. ER-155 (Order at 9) (Plaintiffs here seek to hold Apple liable for . . .reviewing and deciding whether to exclude the Toast Plus app—conduct that can only be described as publishing activity. The court thus concludes that the second prong of the *Barnes* test is satisfied.").

---

[2]  Before the District Court, Diep did not in fact even concede that Apple was not responsible in any part for the creation of the Toast Plus app. Without discovery into Apple's overall "vetting" process and the specific process for the Toast Plus app, Diep cannot know exactly if or what any specific changes to the code Apple made or what assistance that Apple gave the "Toast Plus" developers. ER-102 (Dkt. No. 50, Pls.' Opp. to Def.'s Mot. to Dismiss at 6) (citing *Pirozzi*, 913 F. Supp.2d at 849 (stating that, "based on the scant record before the Court, it is premature to decide whether the CDA bars Plaintiff's claims . . . if Apple is responsible for the 'creation or development of [the] information' at issue, then Apple functions as an 'information content provider' unprotected by the CDA.") (quoting *Carafano*, 339 F.3d at 1124-25)).

Diep did not complain solely, or even primarily, about Apple's review and vetting process. Instead, as noted above, Diep was misled by Apple's own published statements as to the App Store being a "safe and trusted place to discover and download apps," by Apple stating that it ensures "that the apps we offer are held to the highest standards for privacy, security, and content," and that Apple wants users "to feel good about using every single one [of the millions of applications on the App Store]." ER-6 (FAC), ¶ 14 (citing to App Store website); *see also* ER- 42 (Dkt. No. 43, Def.'s Mot. to Dismiss at 4), lines 13-16 (recognizing that "[a]ll apps on the App Store are subject to, and must comply with, [ ] guidelines to 'address issues of safety, privacy, performance, and reliability' of all apps made available through the App Store.") (quoting *Epic Games, Inc.*, 2021 WL 4128925).

Apple cannot deny that it is the author of its own statements concerning the safety, privacy and security of the App Store. This is simply not a CDA issue - it is only because of Apple's false or negligent representations that Plaintiffs downloaded and used the Toast Plus app in the first place. ER-4 (FAC), ¶ 2 (stating that Plaintiffs, "relying on Apple's express representations that its Apps were safe, Plaintiffs and Class Members transferred cryptocurrency to Toast Plus, which was subsequently stolen."). The District Court's CDA analysis was

therefore predicated on a parsed reading of the First Amended Complaint, and reversible error.

C. *The District Court's Mistaken Limitation of Immunity for Violations of Criminal Statutes*

In Section 4 of the Order, the Court, citing *Gonzales v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021), found that Section 230 provided immunity to civil claims based on Federal criminal statutes (*e.g*, the CFAA and ECPA counts). ER-156 (Order at 10). However, that analysis would only be correct if the District Court's Section 230 analysis was otherwise correct, which is not the case. Because Diep seeks to hold Apple liable for its own statements that Apple itself published, this blanket dismissal of the CFAA and EPCA claims was reversible error.

The District Court's blanket analysis further ignored the actual allegations in the complaint, which it must read in the light most favorable to Plaintiffs. The Ninth Circuit has held that the CFAA "target[s] the unauthorized procurement or alteration of information[.]" *United States v. Nosal,* 676 F.3d 854, 863 (9th Cir. 2012) (quoting *Shamrock Foods Co. v. Gast*, 535 F. Supp.2d 962, 965 (D.Ariz. 2008)). Diep alleged that the Toast Plus application is designed to exceed the authorization that users agree to because it is a "phishing" and "spoofing" app, ER-12 (FAC), ¶ 50, and Apple knew of the fraudulent purpose of Toast Plus prior to

allowing it to be distributed on the App Store because of its "rigorous vetting process."  ER-6 (*id.*), ¶ 18, ER-12 (*id.*), ¶ 51.[3]

Furthermore, this is not a case of users *authorizing* the conduct, rather, it is a case of Apple *exceeding* the authorization that was given, because the app in question did not do what it was advertised on the App Store to do, which Apple knew prior to distributing it to unknowing users. *See* fn. 3, *supra* (noting that "phishing" is a criminal violation of CFAA).  Diep consented to downloading a cryptocurrency wallet, they did not consent to download a "spoofing" / "phishing" scam.  *See San Miguel v. HP Inc.*, 317 F. Supp.3d 1075, 1086 (N.D. Cal. 2018) (upholding a § 1030(a)(5)(A) claim against motion to dismiss where plaintiffs alleged they authorized software update, not that they authorized damage to their devices).

Since Apple knew that it would be distributing a "spoofing" / "phishing" app and did so anyways, it participated in the exceeding of authorization of access, and or conspired to do the same, by intentionally and overtly distributing the fraudulent Toast Plus application.  ER-12 – ER-13 (FAC), ¶ 53.  Diep specifically alleged that the Toast Plus app, which Apple "vetted," had a "sole purpose [ ] to entice consumers to divulge their cryptocurrency account information, by mimicking an

---

[3]. "Phishing" that results in loss is an illegal act under CFAA. *United States v. Iyamu*, 356 F.Supp.3d 810, 814 (D. Minn. 2018).

established cryptocurrency wallet in name, mark, and design, thereby allowing

hackers to steal that cryptocurrency . . ." and that Apple knew of that fraudulent

purpose "prior to authorizing it for distribution on the App Store." ER-12 (*id.*), ¶¶

50-51; *c.f., Nowak v. Xapo, Inc.*, Case No. 5:20-cv-03643-BLF, 2020 WL 6822888,

at *3 (N.D. Cal. Nov. 20, 2020) (claimant there did not plead defendant knew of

the hacking, unlike the allegations here). Both Apple and the District Court

glossed over or ignored these allegations, and this Court should reverse its

dismissal.

Likewise, as to the ECPA claim (Count II), the District Court ignored

entirely Diep's allegation that Plaintiffs downloaded the Toast Plus "spoofing" or

"phishing" app *from Apple* and not from the unknown third-party developer of the

fraud. ER-4 (FAC), ¶ 2, ER-7 (*id.*), ¶ 22. The unlawful interception and disclosure

of Diep's seed phrases, ER-7 - ER-8 (*id.*), ¶¶ 25, 26, 27, occurred as a result of the

seed phrase being entered into the app and on Diep's Apple device, which were

then intercepted and disclosed. *See also,* ER-14 – ER-15 (*id.*), ¶¶ 62-67.

As it was an application that Apple had vetted, approved, made available in

the App Store, advertised as safe, and hosted on its own servers, that intercepted

and disclosed the communication, Diep has alleged that it was *Apple* that

intercepted and disclosed the seed phrases. Apple was not the "means through

which" a third-party intercepted a communication, it was Apple's product itself that intercepted and disclosed the communication and sensitive information. And Apple's "intent" can be shown through the fact that the App went through a "rigorous vetting process," meaning Apple knew that it was published a fraud. ER-*6* (*id.*), ¶ 18. Because the District Court again skipped these allegations, which are plainly made in the First Amended Complaint, this Court should reverse their dismissal.

   D. *The Court Erred in Providing Blanket Immunity for the State Law Claims, Which Were Properly Plead, Even Under a Heightened Pleading Standard*

   The District Court erred when it applied the heightened pleading standard of FRCP Rule 9(b) to Diep's state law claims, and focused only on the acts of the third-party application, while ignoring the extensive allegations detailing the representations and acts of the Defendant Apple.

   The District Court further explained its blanket provision of immunity to Apple under Section 230 in another section of the Order:

> Throughout their pleading, plaintiffs repeatedly avoid basing their claims solely on Apple's representations of App Store safety, instead contending that it is the combination of Apple's representations along with its review and publication of apps on the App Store that underlies the company's liability. *See*, *e.g.*, FAC, ¶¶ 2, 90-94, 101-03, 147-50. This makes sense because the alleged misrepresentations regarding App Store safety standing alone would not give rise to liability in the absence of

Apple's having reviewed and published the apps. Because
plaintiffs fail to delineate between Apple's conduct in
publishing the Toast Plus app and Apple's conduct in touting
the safety of the App Store, and because those allegations are
inextricably intertwined, it is not possible to consider these
allegations separately as plaintiffs suggest in their opposition.
The consumer protection claims, as pleaded, seek to hold Apple
liable for its publication of the Toast Plus app, but as discussed
above, Apple is immune for such conduct pursuant to § 230.

ER-157 (Order at 11). This argument on behalf of Apple boils down to the

following logic: Apple made clear and unequivocal statements about the quality,

useability, and safety of *all* of the applications in the App Store, but, because they

are not the creator of those same applications (an issue that Diep has not conceded

at this point, *see, supra,* n. 2) that they warranted for fitness, it can have no liability

under Section 230.

This analysis perverts how a negligence or misrepresentation claim works.

In order to establish liability, Diep would of course have to first allege a duty (here,

publishing clear and affirmative statements as to quality, useability, and safety of

*all* of the applications in the App Store to consumers who can only obtain

applications from that same App Store, including her), but she would also have to

allege a breach of that same duty (*e.g.*, reviewing the code for an application that is

solely designed to steal the asserts of the users, but still agreeing to publishing it).

The difference between claims made here and those made in *Gonzalez,* 2 F.4th 871,

and *Twitter, Inc. v. Taamneh*, 598 U.S. ___ (2023), is simple – neither Google nor Twitter warrant or guarantee their content for fitness, useability, or safety – in fact, the opposite could be argued. Twitter, in particular, prominently warns users that fake and/or harmful content exists on its platform.[4] To apply the same standard is therefore in error. By conflating proper pleading with "inextricable intertwining" the publisher issue, the District Court improperly found that Apple could have no liability.

In addressing the state law claims as one group, the District Court found that Diep's "allegations do not specify 'the who, what, when, where, and how' of Apple's wrongdoing sufficient to meet the particularity of FRCP Rule 9(b). According to the District Court, Diep instead advanced muddy and conclusory arguments about Apple's role in the misappropriation of their cryptocurrency. ER-158 (Order at 12) (citing ER-17 – ER-18 (FAC), ¶¶ 90-94). This holding, citing to four form pleading averments, ignores the allegations elsewhere in the FAC (and incorporated into that Count) that reproduce Apple's representations (and where to find them, even today), ER-6 (FAC), ¶ 14, ER-6 (*id.*), n. 1, that the Plaintiffs saw Apple's representations as to fitness and safety of the applications in the App Store,

---

[4] "You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive." *E.g.*, https://twitter.com/en/tos.

ER-6 (*id.*), ¶ 16, that Apple knew of the content, code, and purpose of the Toast Plus application prior to and after publishing it, ER-12 (*id.*), ¶¶ 50-52, and detailing how Apple's failures led to each named Plaintiff losing their cryptocurrency. ER-7 – ER-9 (*id.*), ¶¶ 24-38. Therefore, "the who, what, when, where, and how" are pled with specificity.

Because Diep did in fact pled to the standard of FRCP Rule 9(b), the District Court's holding that she failed to do so was in error. However, it was also error to apply that standard to Diep's consumer protection claims. To state a claim under the fraud prong of the UCL, it is unnecessary to show the elements of common law fraud, only that "members of the public are likely to be deceived" by the practice. *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009). "This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Id.*

The fraud prong is broad and covers cases where there is no "advertising" and where there is no affirmative or untrue statement:

> [A fraud prong claim] may be based on representations to the public which are untrue, and "'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. … *A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under*"' the UCL. The determination as to

whether a business practice is deceptive is based on the likely effect
such practice would have on a reasonable consumer."

*Klein v. Chevron U.S.A., Inc.,* 202 Cal.App.4th 1342, 1380-1381 (2012),

(emphasis added, internal citations omitted).  And "where, as here, a plaintiff

alleges exposure to a long-term advertising campaign, the plaintiff is not required

to plead with an unrealistic degree of specificity that the plaintiff relied on

particular advertisements or statements."  *In re Tobacco II Cases*, 46 Cal.4th at

328.  This Circuit has analyzed CLRA claim under this same standard.  *Williams v.*

*Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

The First Amended Complaint satisfied this pleading standard:

> Plaintiffs and Class Members relied on Apple's long-standing
> campaign of representing that its App Store is 'a safe and
> trusted place' and downloaded a 'Toast Plus' application to
> store cryptocurrency. Unknown to Plaintiffs and Class
> Members, in actuality, the Toast Plus application was a
> 'spoofing' or 'phishing' program created for the sole purpose of
> stealing cryptocurrency, by obtaining consumers'
> cryptocurrency account information and thereafter routing the
> same to the hackers' personal accounts. Not knowing this, and
> relying on Apple's express representations that its Apps were
> safe, Plaintiffs and Class Members transferred cryptocurrency
> to Toast Plus, which was subsequently stolen. And despite
> numerous complaints regarding the fraudulent nature of the
> Toast Plus application, Apple allowed it to remain in the App
> Store and failed to warn Plaintiffs and Class Members of the
> danger of the application . . .

ER-4 (FAC), ¶ 2.

Diep also identified actionable omissions. "[A]n omission is actionable under the CLRA if the omitted fact is (1) 'contrary to a [material] representation actually made by the defendant' or (2) is 'a fact the defendant was obliged to disclose.'" *Gutierrez v. Carmax Auto Superstores California*, 19 Cal.App.5th 1234, 1258 (2018), *as modified on denial of reh'g* (Feb. 22, 2018). "In the context of the CLRA, a fact is 'material' if a reasonable consumer would deem it important in determining how to act in the transaction at issue. In other words, a defendant has a duty to disclose when the fact is known to the defendant and the failure to disclose it is "misleading in light of other facts ... that [the defendant] did disclose.' '" *Id*. (internal citation omitted).

Diep further alleged that "Apple controls what applications may be sold or provided to consumers through the App Store by a rigorous vetting process that involves provision of the proposed application's purpose and a copy of the application itself and any relevant source code, users' guides, and software documentation," ER-6 (FAC), ¶ 18, that "despite numerous complaints regarding the fraudulent nature of the Toast Plus application, Apple allowed it to remain in the App Store and failed to warn Plaintiffs and Class Members of the danger of the application," ER-4 (*id*.), ¶ 2, and "Apple failed to properly vet the Toast Plus

application before providing it to the public, failed to warn the public of the actual risks of applications in the App Store, failed to remove Toast Plus from the App Store after learning of its dangerous nature, and failed to warn or notify each Toast Plus user of the danger after learning of the danger itself." ER-20 (*Id.*), ¶ 103.

Because the District Court applied the wrong standard to Diep's state-law consumer protection claims, the dismissal of those claims was in legal error, especially with prejudice and without leave to amend.

E. *Under California Law, the Terms Cannot Shield Apple from its Own Conduct*

The District Court, in considering the applicability and conscionability of Apple's Terms to this case again misconstrued the allegations, stating that "[t]hough plaintiffs contend that this limitation of liability is unenforceable under section 1668, that section is only implicated where a party seeks to avoid liability for its *own* misconduct," not when "plaintiffs seek to hold Apple liable for conduct of a third party, the Toast Plus app developers[.]" ER-160 (Order at 14) (emphasis in original). As noted above, this construction ignores the actual allegations made, and adopts Apple's arguments *in toto*.

As noted extensively above, Diep's claims are predicated on Apple's representations as to the fitness, useability, and safety of the applications in the App Store – not the conduct of third parties. Because the District Court again

adopted Apple's misconstruction of the allegations in focusing on third party conduct, rather than Apple's own false and misleading representations, the District Court's analysis of *Barrett I* (*Barrett v. Apple Inc.*, 523 F. Supp.3d 1132 (N.D. Cal. 2021)) and *Barrett II* (*Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2022 WL 2119131 (N.D. Cal. June 13, 2022)) was and is in error, and should be reversed.

The Terms, and *Barretts I & II*, do not bar claims for Apple's own conduct. The Terms expressly recognize that the "limitation of liability" provision is limited "TO THE EXTENT NOT PROHIBITED BY LAW." ER-71 (Dkt. 43-3, Ex. A to Def.'s Mot. to Dismiss), ER-84 (Dkt. 43-4, Ex. B to Def.'s Mot. to Dismiss), Terms § G(f). Such a "prohibition" applies in full force under the substantive law of California, which provides that "a law established for a public reason cannot be contravened by a private agreement," Cal. Civ. Code § 3513, and that "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, *or violation of law*, whether willful or negligent, *are against the policy of the law*." Cal. Civ. Code § 1668 (emphasis added); *see also Health Net of California, Inc. v. Dep't of Health Servs.*, 113 Cal.App.4th 224, 235 (2003) (surveying cases, finding that "California courts have construed [Civil Code § 1668] for more than 85 years to at least invalidate contract clauses that relieve a

party from responsibility for future statutory and regulatory violations.").

Consistent with this, each of the civil statutory claims asserted are "unwaivable." *See* Cal. Civ. Code § 1798.192 (waiver of rights under the California Consumer Privacy Act are "shall be deemed contrary to public policy and shall be void and unenforceable."); Cal. Civ. Code § 1751 ("Any waiver by a consumer of the provisions of [the Consumers Legal Remedies Act] is contrary to public policy and shall be unenforceable and void."); *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 961 (2017) (finding waiver of CLRA and Unfair Competition law public injunctive claims "invalid and unenforceable under California law."); Md. Code Ann., Comm. Law Art. § 13-103(a) (Maryland Consumer Protection Act "is intended to provide minimum standards for the protection of consumers in the State."). Because the District Court did not even consider this law, at a minimum, Diep asks this Court to strike the dismissal and remand this matter for full consideration of the Terms and their applicability to Apple's own conduct.

F. *The District Court Committed Error When it Failed to Consider or Allow Possible Amendments of the Pleadings*

Here, the District Court, in granting dismissal with prejudice, simply stated that "any amendment would be futile given Apple's immunity afforded by § 230." ER-160 (Order at 14). "Under [9th Circuit] case law, 'dismissal without leave to

amend is improper unless it is clear, upon *de novo* review, that the complaint could

not be saved by any amendment.'" *Lee v. City of Los Angeles*, 250 F. 3d 668, 692

(9th Cir. 2001) (quoting *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996); citing

*Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1196 (9th Cir.1998)).

Nowhere during oral argument or in the Order did the District Court consider

whether there was any possible amendment that could have cured the defects that it

found.[5] "A district court's failure to consider the relevant factors and articulate

why dismissal should be with prejudice instead of without prejudice may constitute

an abuse of discretion." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048,

1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9

L.Ed.2d 222 (1962); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

1393, 1401 (9th Cir.1986); *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.*

*Bureau*, 701 F.2d 1276, 1292-93 (9th Cir.1983)). Therefore, at a minimum, Diep

asks this Court to strike the dismissal and remand this matter for an opportunity to

file an amended complaint addressing the District Court's concerns.

As a final note, the District Court ignored many of the arguments made by

_____

[5] In her Opposition to the Motion to Dismiss, Diep suggested in no less than two
places that the FAC could be amended to provide more detail. ER-111 (Dkt. No.
50 at 15); ER-98 (*id.*), n. 1. Apple, however, did suggest there was no
amendment that could cure the issues that it raised in its Motion to Dismiss at
oral argument, a position adopted by the District Court without any analysis.
ER-127 (Tr. at 8), lines 23-24.

Diep in opposition to Apple's Motion, arguments that were extensively briefed by Diep. Diep requests that any remand direct the District Court to fully address those issues, so that the matter may proceed without further delay.

## VI. RELIEF REQUESTED

For the foregoing reasons, Appellants request that this Court reverse the District Court's grant of dismissal with prejudice, and remand the matter for further proceedings consistent with that reversal.

DATED:     July 31, 2023

RESPECTFULLY SUBMITTED,

/s/Joshua Whitaker
ADELPHI LAW
JOSHUA WHITAKER, ESQ.
whitaker@adelphilaw.com
2306 Wineberry Terrace
Baltimore, MD 21209
Telephone: (888) 367-0383
Facsimile: (888) 367-0383

*Attorney for Appellants Hadona Diep,*
*Ryumei Nagao, and the putative class*

CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing Brief and Excerpts of the Record was served upon counsel for Appellee

via this Court's electronic filing system, this 31st day of July, 2023.

/s/Joshua Whitaker
JOSHUA WHITAKER, ESQ.

Certificate of Compliance With Type-Volume Limit,Typeface Requirements, and

Type-Style Requirements

1. This document complies with the type-volume limit and or the word limit of the Federal Rules of Appellate Procedure and the Rules of this Court, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains some 6,808 words, and or this brief uses a monospaced typeface and contains 609 lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 font.

DATED:     July 31, 2023

                                        /s/Joshua Whitaker
                                        JOSHUA WHITAKER, ESQ.