# United States Court of Appeals for the Ninth Circuit

HADONA DIEP, ET AL.,

*Plaintiffs-Appellants,*

v.

APPLE INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of California,
No. 4:21-CV-10063-PJH (Hon. Phyllis J. Hamilton)

## BRIEF FOR APPLE INC.

Daniel M. Lifton
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Mark A. Perry
Zachary D. Tripp
Crystal L. Weeks
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW
Washington, DC 20036
(202) 682-7000
mark.perry@weil.com

*Counsel for Apple Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that Apple Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

Introduction ................................................................................................... 1

Statement of Issues ...................................................................................... 3

Statement of the Case ................................................................................. 3

    A.  Apple's App Store and third-party apps ...................................... 3

    B.  Third-party wrongdoers—not Apple—allegedly stole
        Plaintiffs' cryptocurrency ................................................................ 4

    C.  Plaintiffs sue Apple for the alleged wrongdoing of others .......... 6

    D.  Procedural history ........................................................................... 7

Standard of Review ...................................................................................... 9

Summary of the Argument ....................................................................... 10

Argument ..................................................................................................... 15

    I.  Section 230 bars Plaintiffs' claims .................................................. 15

    A.  Section 230 protects online platforms from liability for third-
        party content ................................................................................... 15

    B.  The Complaint seeks to hold Apple liable for third-party
        content available on the App Store ............................................. 16

        1.  The App Store is an interactive computer service ............... 16

        2.  The Toast Plus app is third-party content ........................... 17

        3.  Plaintiffs' claims seek to treat Apple as the publisher of
            the Toast Plus app ................................................................. 18

    C.  Plaintiffs' contrary arguments are meritless ............................. 23

        1.  Plaintiffs' consumer protection and negligence claims
            depend on third-party content, not any alleged Apple
            statements ............................................................................... 23

        2.  Plaintiffs' arguments about hacking and privacy depend
            on third-party content ........................................................... 28

    D.  Section 230's core purpose is to prevent claims like this .......... 29

    II.  Apple's Terms and Conditions also bar Plaintiffs' claims .............. 32

    A.  The Terms unequivocally bar Plaintiffs' claims ....................... 32

  B. Plaintiffs' counterarguments lack merit .................................... 33

III. Plaintiffs independently fail to state any plausible claims ............. 37

  A. Plaintiffs' consumer protection claims fail ................................ 37

    1. Rule 9(b) applies .................................................................... 37

    2. The Complaint fails to plead fraud with particularity ........ 38

    3. The consumer protection claims fail for additional
      reasons .................................................................................... 42

  B. Plaintiffs' remaining claims fail ................................................. 44

    1. The CFAA claim fails because the Complaint does not
      allege that Apple engaged in hacking ................................... 44

    2. The Wiretap claims fail because the Complaint does not
      allege that Apple intercepted any information ................... 47

    3. Plaintiffs' privacy claims fail because the alleged harm
      has nothing to do with Apple's practices for securing its
      own data .................................................................................... 49

    4. Plaintiffs' negligence claim fails because Apple's Terms
      foreclose the duty of care ...................................................... 50

 IV. Amendment would be futile ............................................................ 52

Conclusion ................................................................................................. 53

Certificate of Compliance .......................................................................... 54

Certificate of Service ................................................................................. 55

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*A. A. Baxter Corp. v. Colt Indus., Inc.*,
10 Cal. App. 3d 144 (1970) ............................................................ 24

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................... 14, 39, 40, 42

*Apple, Inc. v. Pepper*,
139 S. Ct. 1514 (2019) .................................................................. 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................... 18, 36

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ................................................*passim*

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) ............................... 13, 34, 36

*Barrett v. Apple Inc.*,
No. 5:20-CV-04812-EJD, 2022 WL 2119131 (N.D. Cal.
June 13, 2022) ............................................................................. 35

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ..................................................... 30

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ............................................ 14, 38, 39

*Beckman v. Match.com, LLC*,
668 F. App'x 759 (9th Cir. 2016) ................................................. 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................ 9, 47

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014) ..................................................... 38

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................... 44

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

*Coffee v. Google, LLC,*
    20-cv-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10,
    2021) ................................................................... 17

*Coffee v. Google, LLC,*
    20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10,
    2022) ................................................................... 42

*Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie
    Dev., Inc.,*
    972 F.3d 684 (5th Cir. 2020) .......................................... 22

*Cubby, Inc. v. CompuServe Inc.,*
    776 F. Supp. 135 (S.D.N.Y. 1991) ................................... 29

*Daugherty v. Am. Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) .................................... 24, 42

*Diaz v. Intuit, Inc.,*
    5:15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May
    15, 2018) .............................................................. 51

*Doe v. Epic Games, Inc.,*
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ...................... 42, 43

*Doe v. Internet Brands,*
    824 F.3d 846 (9th Cir. 2016) .......................................... 22

*Dyroff v. Ultimate Software Grp.,*
    934 F.3d 1093 (9th Cir. 2019) .................................... 9, 10

*Epic Games, Inc. v. Apple, Inc.,*
    67 F.4th 946 (9th Cir. 2023) .......................................... 31

*Fair Hous. Council of San Fernando Valley v.
    Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) (en banc) ................*passim*

*I.B. ex rel. Fife v. Facebook, Inc.,*
    905 F. Supp. 2d 989 (N.D. Cal. 2012) .......................... 42

*Free Kick Master LLC v. Apple Inc.,*
    140 F. Supp. 3d 975 (N.D. Cal. 2015) ....................... 16, 17

# TABLE OF AUTHORITIES

**Page(s)**

*In re GlenFed, Inc. Sec. Litig.,*
  42 F.3d 1541 (9th Cir. 1994) ...................................... 39, 40

*Golden Eagle Distrib. Corp. v. Burroughs Corp.,*
  801 F.2d 1531 (9th Cir. 1986) ........................................ 38

*Golden Gate Way, LLC v. Enercon Servs., Inc.,*
  572 F. Supp. 3d 797 (N.D. Cal. 2021) ............................ 32

*Gonzalez v. Google LLC,*
  143 S. Ct. 119 (2023) .................................................. 9

*Gregory v. Albertson's, Inc.,*
  104 Cal. App. 4th 845 (2002) ........................................ 43

*Gudgel v. Clorox Co.,*
  514 F. Supp. 3d 1177 (N.D. Cal. 2021) .......................... 39

*Gutierrez v. Carmax Auto Superstores Cal.,*
  19 Cal. App. 5th 1234 (2018) ........................................ 41

*Hoai Dang v. Samsung Elecs. Co.,*
  14-cv-00530, 2018 WL 6308738 (N.D. Cal. Dec. 3, 2018).............. 39

*Hodson v. Mars, Inc.,*
  891 F.3d 857 (9th Cir. 2018) ........................................ 41

*HomeAway.com, Inc. v. City of Santa Monica,*
  918 F.3d 676 (9th Cir. 2019) ........................................ 19

*Ingels v. Westwood One Broad. Servs., Inc.,*
  129 Cal. App. 4th 1050 (2005) ...................................... 43

*In re iPhone Application Litig.,*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................... 45, 51

*Johnson v. Balt. Police Dept.,*
  No. 18-cv-2375-SAG, 2021 WL 1610152 (D. Md. Apr. 23,
  2021) .................................................................. 49

*Jones v. Bock,*
  549 U.S. 199 (2007) .................................................. 10

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) .................................. 13, 37

vi

# TABLE OF AUTHORITIES

**Page(s)**

*Kimzey v. Yelp! Inc.,*
836 F.3d 1263 (9th Cir. 2016) ............................................. 17, 19, 20

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.,*
No. 14-cv-02737-BLF, 2015 WL 1289984 (N.D. Cal.
Mar. 20, 2015) .................................................................... 44

*Kwikset Corp. v. Superior Ct.,*
51 Cal. 4th 310 (2011) ........................................................ 40

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) ............................................... 52

*Lemmon v. Snap, Inc.,*
995 F.3d 1085 (9th Cir. 2021) ...................................... 19, 20, 21, 52

*Lewis v. YouTube, LLC,*
244 Cal. App. 4th 118 (2015) ............................................. 12

*Markborough Calif., Inc. v. Superior Ct.,*
227 Cal. App. 3d 705 (1991) .............................................. 32

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*
440 F. Supp. 3d 447 (D. Md. 2020) .................................... 50

*Opperman v. Path, Inc.,*
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................ 28

*Palmer v. Apple Inc.,*
No. 15-cv-05808, 2016 WL 1535087 (N.D. Cal. Apr. 15,
2016) .................................................................................... 14, 39

*Parents for Priv. v. Barr,*
949 F.3d 1210 (9th Cir. 2020) ............................................ 53

*Perfect 10, Inc. v. CCBill LLC,*
488 F.3d 1102 (9th Cir. 2007) ............................................ 15

*Peterson v. S.F. Cmty. Coll. Dist.,*
36 Cal. 3d 799 (1984) ......................................................... 41

*Pfizer Inc. v. Superior Court,*
182 Cal. App. 4th 622 (2010) ............................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

*Pirozzi v. Apple Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................. 27

*R.H. v. Los Gatos Union Sch. Dist.*,
  33 F. Supp. 3d 1138 (N.D. Cal. 2014) ............................................. 51

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .................................................................... 50

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ......................................... 46

*Estate of Saunders v. Comm'r*,
  745 F.3d 953 (9th Cir. 2014) .......................................................... 18

*Smith v. LG Elecs. U.S.A., Inc.*,
  C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ........ 44

*In re Sony PS3 Other OS Litig.*,
  551 F. App'x 916 (9th Cir. 2014) .............................................. 40, 45

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
  1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ........................ 29, 30

*Sud v. Costco Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017) ......................................... 43

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) ...................................... 48, 49

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (Cal. 2009) ........................................................... 38

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) .................................................................. 34, 47

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) .......................................................... 48

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) (en banc) ......................................... 44

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016) ........................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Stevens,*
  559 U.S. 460 (2010) .......................................................... 22

*Von Beltz v. Stuntman, Inc.,*
  207 Cal. App. 3d 1467 (1989) ......................................... 51

*Webb v. Trader Joe's Co.,*
  999 F.3d 1196 (9th Cir. 2021) ........................................ 18

*Wheeler v. Oppenheimer,*
  140 Cal. App. 2d 497 (1956) ........................................... 32

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) .......................................... 39

**Federal Statutes & Rules**

Communications Decency Act of 1996, Pub. L. No. 104-104,
  Tit. V, 110 Stat. 113

  47 U.S.C. 230(c)(1) .................................... 1, 3, 15, 16, 18

  47 U.S.C. 230(e)(3) ........................................................ 15

  47 U.S.C. 230(f)(3) ......................................................... 17

Computer Fraud & Abuse Act, 18 U.S.C. 1030 .................. 7

  18 U.S.C. 1030(a) .......................................................... 44

  18 U.S.C. 1030(e)(6) ...................................................... 45

Electronic Communications Privacy Act, 18 U.S.C. 2510 *et
  seq.* ................................................................................ 7

  18 U.S.C. 2511(1) .......................................................... 47

  18 U.S.C. 2511(1)(a) ...................................................... 47

  18 U.S.C. 2511(1)(a)-(d) ................................................ 48

  18 U.S.C. 2520 .............................................................. 48

Fed. R. Civ. P. 9(b)...............................................*passim*

Fed. R. Civ. P. 12(b)(6) ...................................... 3, 8, 10, 37

# TABLE OF AUTHORITIES

**State Statutes**                                                    **Page(s)**

California Consumer Privacy Act of 2018, Cal. Civ. Code
   § 1798.100 *et seq.* ............................................................. 7

   Cal. Civ. Code § 1798.140(i) ............................................ 43

   Cal. Civ. Code § 1798.150(c) ........................................... 43

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ..................... 7

   Cal. Civ. Code § 1770(a) .................................................. 43

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ............. 6, 44

Cal. Civ. Code § 3513 ............................................................ 33

Cal. Civ. Code § 1668 ............................................................ 33

Maryland Personal Information Protection Act,

   Md. Code Ann., Com. Law, § 14-3501 ................................ 7

   Md. Code Ann., Com. Law § 14-3504(c)(1) ...................... 50

   Md. Code Ann., Com. Law § 14-3508 ............................... 49

Maryland Consumer Protection Act, Md. Code Ann., Com.
   Law, § 13-101 ............................................................. 7, 27

Maryland Wiretapping & Electronic Surveillance Act, Md.
   Code Ann., Cts. & Jud. Proc., § 10-402(a) .................... 7, 47

**Miscellaneous**

H.R. Rep. No. 104-458 (1996) .............................................. 30

*Phish*, Oxford English Dictionary (rev. ed. July 2023) ......................... 5

*Spoof*, Webster's Third New International Dictionary (2002) .............. 6

**INTRODUCTION**

Plaintiffs allege that a third-party app defrauded them of their crypto-currency. If those allegations are true, Plaintiffs presumably have a cause of action against the third parties that defrauded them. But there is no basis for holding Apple liable. Apple was entirely uninvolved in the alleged fraud. Apple's only connection to the alleged events is that Apple published the third-party app on the App Store. Nevertheless, Plaintiffs now seek to hold Apple liable for conduct that Plaintiffs admit was perpetrated by others.

As the district court correctly concluded, Plaintiffs' claims against Apple all fail for multiple independent reasons.

First, Section 230 of the Communications Decency Act of 1996, 47 U.S.C. 230(c)(1), forecloses all of Plaintiffs' claims because they "treat[]" Apple "as the publisher" of third-party content. *Id.* The Complaint avowedly seeks to hold Apple liable for harms arising from third-party content (the "spoofing" app) because Apple "allow[ed] [the app] to remain in the App Store." ER-4. Such claims fall within the heartland of Section 230.

Second, Apple's Terms and Conditions ("Terms") preclude all of Plaintiffs' claims. Those Terms provide that there is "NO WARRANTY," that apps are provided "AS IS," that use of apps is "AT YOUR SOLE RISK," and that Apple cannot be held liable for "DAMAGES" "ARISING OUT OF OR RELATED TO" use of an app. ER-70-71 (§ G(e) and (f)); ER-84-85 (§ G(e) and (f)). Plaintiffs concede that the Terms are binding. They unambiguously foreclose

1

Plaintiffs' claims, which seek damages arising out of or relating to use of an app and are predicated on treating Apple as if it had provided a warranty that Apple instead expressly disclaimed.

Third, the Complaint's underlying allegations fail to state a claim on which relief could be granted, providing yet another basis to sustain the dismissal. Plaintiffs have failed to allege fraud with particularity and have failed to state a claim that Apple was negligent or engaged in hacking, a wiretap violation, or a privacy violation. The Complaint thus fails for multiple independent reasons.

Plaintiffs try to paper over those fatal defects by contending that they seek to hold Apple liable for stating that the App Store "has prove[d] to be a safe and trusted place to discover and download apps"—a statement that Plaintiffs allege is false. ER-4 (¶ 14). But the district court correctly saw through that gambit. The Complaint is plainly not an effort to prove that the App Store *as a whole* is not a "safe and trusted place." Nearly two million apps are available on the App Store, yet the Complaint only mentions one. Rather, the Complaint actually seeks to hold Apple liable for the fraud that third parties allegedly perpetrated within that one app. Section 230 and Apple's Terms thus each bar all of Plaintiffs' claims, which also fail as a matter of law in any event because Apple is not responsible for the wrongdoing of third parties. This Court should affirm.

## STATEMENT OF ISSUES

1.     Whether Section 230 forecloses each cause of action in the Complaint because the claims "treat[]" Apple "as the publisher" of third-party content. 47 U.S.C. 230(c)(1).

2.     Whether Apple's Terms and Conditions foreclose each cause of action in the Complaint because Plaintiffs' claims seek to hold Apple liable for damage "arising out of or related to" Plaintiffs' use of a third-party app.

3.     Whether Plaintiffs have independently failed to state a claim upon which relief can be granted under Rule 12(b)(6).

4.     Whether the district court was correct to dismiss the Complaint with prejudice because amendment would be futile.

## STATEMENT OF THE CASE

### A.   Apple's App Store and third-party apps

"'There's an app for that' has become part of the 21st-century American lexicon," as the App Store contains nearly two million apps, the vast majority of which third parties created and developed. *Apple, Inc. v. Pepper*, 139 S. Ct. 1514, 1518-19 (2019); *see* ER-6 (¶ 14); ER-154.

"[A]pplications … sold or provided to consumers through the App Store [go through] a rigorous vetting process that involves provision of the proposed application's purpose and a copy of the application itself and any relevant source code, users' guides, and software documentation." ER-4 (¶ 18 & n.3). Apple tells customers:

[T]he App Store has proved to be a safe and trusted place to dis-
cover and download apps. But the App Store is more than just a
storefront — it's an innovative destination focused on bringing
you amazing experiences. And a big part of those experiences is
ensuring that the apps we offer are held to the highest standards
for privacy, security, and content. Because we offer nearly two
million apps — and we want you to feel good about using every
single one of them.

ER-6 (¶ 14 & n.1).

Use of the App Store by consumers is subject to certain Terms. *See* ER-
5 (¶ 10); ER-9 (¶ 35); ER-64; ER-78. The Terms include, in all caps, a "NO
WARRANTY" provision in which the user expressly acknowledges and
agrees that use of an app is at their "SOLE RISK" and any services per-
formed or provided by an app are "AS IS." ER-70-71 (§ G(e)); ER-84 (§ G(e)).
The next provision is a limitation of liability for "DAMAGES" "ARISING
OUT OF OR RELATED TO" the use of an app. ER-71 (§ G(f)); ER-84-85
(§ G(f)).

## B. Third-party wrongdoers—not Apple—allegedly stole Plain-
tiffs' cryptocurrency

The "Toast Plus" app was created by a third party and was available on
the App Store. ER-7 (¶ 23). It purported to be a cryptocurrency wallet. Cryp-
tocurrency (for example, Bitcoin) is a form of digital or virtual currency gen-
erated and secured by cryptography and hosted on online platforms. Individ-
ual units are often called "coins" or "tokens." *E.g.*, ER-8-9 (¶¶ 25, 31). Cryp-
tocurrencies are accessible through digital or "crypto wallets," via individual

passwords known as "private keys." ER-8 (¶ 25). The Toast Plus app purported to offer these services. ER-7 (¶ 23).

Plaintiffs Hadona Diep and Ryumei Nagao allege that after downloading the "Toast Plus" app from the App Store, they uploaded their private keys to the app. ER-7-9 (¶¶ 23-34). They further allege that the third-party app developer—not Apple—thereafter used those private keys to steal their cryptocurrency, thus causing them financial loss.

Diep, a Maryland resident, alleges that she stored "approximately 474 Ripple (XRP) cryptocurrency coins" (at the time worth around $5,000) in a "secure cryptocurrency wallet, called Rippex." ER-7 (¶ 24); ER-13 (¶ 55). In March 2021, Diep downloaded the Toast Plus app and shared her "private XRP key" with the app. ER-7-8 (¶ 25). A few months later, Diep allegedly discovered that "not only did she have no XRP" in the Toast Plus wallet, but that "her account was 'deleted' on March 3, 2021." ER-8 (¶ 27). Diep alleges that "Toast Plus was not in fact a version of the legitimate Toast Wallet application, but was instead a 'spoofing' or 'phishing' program" that "obtain[ed] consumers' cryptocurrency account information and thereafter rout[ed] the same to the hackers' personal accounts." ER-8 (¶ 29).

"Spoofing" and "phishing" are forms of fraud. *See Phish*, Oxford English Dictionary (rev. ed. July 2023) ("To perpetrate a fraud on the internet in order to glean personal information from individuals, esp. by impersonating a

reputable company; to engage in online fraud by deceptively 'angling' for personal information."); *Spoof*, Webster's Third New International Dictionary (2002) ("to deceive by a hoax"; "to use or practice deceit"). As Plaintiffs allege, "Toast Plus was not an actual application, but instead a medium for the commission of fraud." ER-9 (¶ 38).

Nagao, a resident of Japan, has a similar story. ER-5 (¶ 6). Nagao alleges that he downloaded the Toast Plus app in December 2020. ER-8 (¶ 31). Nagao alleges that he deposited XRP cryptocurrency into Toast Plus, and it was later stolen. ER-8-9 (¶¶ 31-34). After learning in April 2021 of the fraud, Nagao alleges that he contacted Apple and the Federal Bureau of Investigations and informed them "of the crime." ER-9 (¶ 34).

### C. Plaintiffs sue Apple for the alleged wrongdoing of others

Plaintiffs, on behalf of themselves and two proposed classes, now seek to hold Apple liable for the third-party fraud. ER-3. They allege that the Toast Plus app was "a 'spoofing' or 'phishing' program created for the sole purpose of stealing cryptocurrency," Apple represented that the App Store is "a safe and trusted place," and Apple "allowed [the app] to remain in the App Store." ER-4 (¶ 2).

The Complaint advances ten causes of action. These include:

- Violations of Maryland and California consumer protections laws. *See* Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); the Consumers Legal Remedies Act, Cal. Civ. Code § 1750

("CLRA"); the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101 ("MCPA").

- Violations of Maryland and federal computer fraud and wiretap laws. *See* Computer Fraud & Abuse Act, 18 U.S.C. 1030 ("CFAA"); the Electronic Communications Privacy Act, 18 U.S.C. 2510; Maryland Wiretapping & Electronic Surveillance Act, Md. Code Ann., Cts. & Jud. Proc., § 10-402(a) ("Maryland Wiretap Act").

- Violations of Maryland and California privacy laws. *See* California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100, *et seq.* ("CCPA"); Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3501 ("PIPA").

- Common law negligence.

*See* ER-12-27.

Plaintiffs seek to represent a nationwide class of "[a]ll persons who downloaded or otherwise used Toast Plus from the Apple Store [*sic*] within the relevant statutory period and suffered actual loss of cryptocurrency as a result, regardless of the amount of lost cryptocurrency." ER-9 (¶ 39). They also seek to represent a subclass consisting of Maryland residents who similarly "downloaded or otherwise used Toast Plus from the Apple Store [*sic*]" within the limitations period and suffered actual loss. *Id.*

### D. Procedural history

Diep initially filed a complaint in the U.S. District Court for the District of Maryland. ECF No. 1. Diep learned that Apple's Terms contain a forum-selection clause, and she moved to transfer to the Northern District of California. ECF No. 13. The case was transferred. ECF No. 19. Plaintiffs then

filed the First Amended Complaint ("Complaint"), which added Nagao as well as the California consumer claims. ER-3.

Apple moved to dismiss under Rule 12(b)(6) on several bases: (1) Section 230 bars each of Plaintiffs' claims; (2) the Terms bar each of Plaintiffs claims; and (3) the underlying allegations fail to state a claim under the various laws. ER-30. The district court granted Apple's motion. ER-147-160.

First, applying the standard this Court articulated in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), the district court concluded that Section 230 barred Plaintiffs' claims because: (1) "Apple qualifies as an interactive computer service provider"; (2) "Plaintiffs seek to hold Apple liable for its role in reviewing and making the Toast Plus app available," which the court concluded was "publishing activity"; and (3) "the Toast Plus app … was created by another information content provider." ER-156.

Second, the district court held that "the limitation of liability provision [in Apple's Terms] applies to all of plaintiffs' claims," including their consumer protection claims. The court explained that although Plaintiffs contend that their claims are based solely on Apple's representations, "all of plaintiffs' claims … are based on a combination of Apple's representations along with its review and publication of the Toast Plus app." ER-160. Accordingly, the district court concluded, "in addition to the applicability of § 230

immunity, plaintiffs' claims must be dismissed because of the applicability of the Terms' limitation of liability for third-party apps." *Id.*

Third, the district court held that Plaintiffs had also failed to meet the heightened pleading standard of Rule 9(b). ER-157-58. The court explained that Plaintiffs did not specify "the who, what, when, where, and how of Apple's wrongdoing" but instead advanced "muddy and conclusory arguments about Apple's role in the misappropriation of their cryptocurrency." ER-158 (internal quotation marks omitted). The court dismissed with prejudice, explaining that "any amendment would be futile given Apple's immunity afforded by § 230." ER-160.

Plaintiffs then appealed. ER-162.[1]

## STANDARD OF REVIEW

This Court "review[s] de novo … a district court order dismissing a plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Dyroff v. Ultimate Software Grp.*, 934 F.3d 1093, 1096 (9th Cir. 2019). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[1] After Plaintiffs appealed, the Court granted their motion to stay proceedings pending the Supreme Court's decision in *Gonzalez v. Google LLC*, No. 21-1333 (U.S.). ECF No. 61. The Supreme Court vacated this Court's decision in *Gonzalez*, *see* 143 S. Ct. 1191, 1192 (2023), but Plaintiffs do not argue that decision has any effect on this appeal.

U.S. 544, 570 (2007). A motion to dismiss should be granted when "the alle-gations, taken as true, show the plaintiff is not entitled to relief" because of the applicability of a defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). This Court has repeatedly affirmed the dismissal of cases under Section 230 at the pleading stage. *E.g.*, *Dyroff*, 934 F.3d at 1101.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Plaintiffs' claims because they fail for multiple independent reasons. Section 230 forecloses all of Plaintiffs' claims. Apple's limitation of liability provision forecloses all of Plaintiffs' claims. Plaintiffs have failed to allege fraud with particularity. And all the underlying claims otherwise fail to state a claim. This Court should affirm.

I.    The district court correctly held that Section 230 forecloses all of Plaintiffs' claims against Apple.

Congress enacted Section 230 to immunize providers of interactive com-puter services from liability arising from content created by third parties. This Court applies a three-part test for determining whether Section 230 im-munity applies, s*ee Barnes*, 570 F.3d at 1100-01, and all three *Barnes* factors are satisfied.

First, it is undisputed that the App Store is an interactive computer ser-vice. *See* ER-6 (¶¶ 13-15). Second, the Complaint alleges that a third party (not Apple) was the developer of the Toast Plus app. ER-7 (¶ 23). The app

therefore is third-party content. And third, the district court correctly held that Plaintiffs' claims would treat Apple as the publisher of the Toast Plus app. Even though Plaintiffs seek to recover for harm allegedly arising from third-party content (the Toast Plus app), they nonetheless allege that Apple is liable because Apple "allowed" the app to be distributed on the App Store and failed to remove it. That is a heartland Section 230 claim. It seeks to hold Apple liable for publishing activity: making third-party content available to the public.

Plaintiffs argue that their claims "are all predicated *solely*" (Br. 12) on Apple's alleged misrepresentation that the App Store is a "safe and trusted place to discover and download apps," Br. 14. But as the district court correctly observed, that is merely an attorney argument that "does not reflect what [Plaintiffs] have alleged." ER-157. Their allegations inextricably depend on the content of the Toast Plus app. Plaintiffs seek to recover for harm arising from their interaction with the Toast Plus app—and they seek to hold Apple liable for that harm because Apple allegedly failed to discover in advance that the Toast Plus app's content was a "spoof" or fraud and instead allowed the app to be distributed on the App Store and "failed to remove" it. *E.g.*, ER-19-20 (¶¶ 102-103); ER-27 (¶ 156). That claim thus unavoidably depends on publishing activity: the "spoofing" app was available to the public. The claim thus falls into the heartland of Section 230.

On appeal, Plaintiffs attempt to argue that their claims arise from Apple's "warrant[y] for fitness." Br. 19. But Plaintiffs have not brought a claim for breach of contract or breach of warranty. Nor could they: Apple unambiguously disclaimed any warranty and Plaintiffs waived liability in the Terms.

Plaintiffs' claims not only fail on the text of Section 230, but also would put Apple (and other platforms) to the very dilemma Congress enacted Section 230 to eliminate. If a platform could not promote its monitoring efforts without being held liable for each and every app that happens nonetheless to evade the platform's monitoring efforts, then the incentive to monitor would be sharply undercut. The platform would have no incentive to expend significant resources to ensure (as best as it can) that a platform is safe and secure. That could trigger the very race to the bottom that Congress sought to prevent when it enacted Section 230.

II.   The district court was also correct to hold that Apple's Terms independently bar each of Plaintiffs' claims. It is undisputed that those Terms are binding on Plaintiffs. Those Terms contain a disclaimer of any warranty and a limitation of liability provision, providing that Apple is not liable for damages "arising out of or related to [] use of" third-party apps." ER-71. Under California law, those Terms are enforceable as written. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015). They flatly preclude Plaintiffs' claims.

Plaintiffs assert that Apple's disclaimer of liability is void and unenforceable on the theory that they are suing Apple for its "*own* misconduct." Br. 24. But as the district court correctly explained, that theory does not hold water. The only actionable misconduct Plaintiffs allege is that of the third-party developer in developing a fraudulent app and stealing Plaintiffs' cryptocurrency. Apple cannot be held liable for that third-party's misconduct given the language of the waiver. *See Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1140-41, 1158, 1163 (N.D. Cal. 2021) (enforcing limitation of liability provision and dismissing claims brought by victims of a third-party scam using iTunes gift cards).

Plaintiffs again try to focus on Apple's supposed "misrepresentations" about the safety of the App Store. But the Complaint does not, and could not, seek to challenge the safety of the App Store overall based on allegations that a single app—out of millions—was fraudulent, particularly when Apple has expressly disclaimed any warranty for individual apps. Instead, the allegations in the Complaint make clear that Plaintiffs are seeking to hold Apple liable for a third party's fraud. The Terms squarely foreclose such a claim.

III. Even if Section 230 and the Terms did not each independently bar Plaintiffs' claims, the Complaint would still fail to state a claim.

A. Plaintiffs have patently failed to meet Rule 9(b)'s heightened pleading standard, *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

2009), because they have failed to identify the "'who, what, when, where and how of the misconduct charged,'" and have failed to identify "'what is false or misleading about a statement.'" *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citations omitted). Instead, they charge generically that that the App Store, *in toto*, is "unsafe" and cannot be "trusted" based solely on the alleged presence of a single spoofing app out of "nearly two million" other apps. ER-6 (¶ 14). Courts in this Circuit have routinely dismissed similar claims, particularly where, as here, the defendant has disclaimed liability. *See, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 559 (N.D. Cal. 2019); *Palmer v. Apple Inc.*, No. 15-cv-05808, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016). This Court should reach the same result.

B.   Plaintiffs' remaining claims fare no better. Plaintiffs assert a claim under an anti-hacking statute, the Computer Fraud and Abuse Act, yet fail to allege that Apple engaged in any hacking. Plaintiffs bring claims under Federal and State Wiretap Acts, yet fail to allege that Apple intercepted any communication. Plaintiffs challenge Apple's data privacy practices under the Maryland Personal Information Protection Act, but this case has nothing to do with Apple's privacy practices. Plaintiffs voluntarily uploaded their data to a third-party app. And, finally, Plaintiffs bring a negligence claim, but Apple's Terms foreclose a duty of care. Quite simply, there is no basis for holding Apple liable for the third-party fraud.

IV. In light of the foregoing, the district court did not abuse its discretion in dismissing the Complaint with prejudice. At bottom, Plaintiffs are seeking to hold Apple liable for losses caused by third-party content. Because Section 230 and the Terms each foreclose that effort no matter how Plaintiffs plead it, amendment would be futile.

## ARGUMENT

## I. Section 230 bars Plaintiffs' claims

### A. Section 230 protects online platforms from liability for third-party content

Congress enacted Section 230 to immunize providers of interactive computer services from liability arising from content created by third parties. Section 230(c)(1) states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Congress preempted inconsistent state laws: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. 230(e)(3).

Section 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotation marks omitted). "[C]lose cases … must be resolved in favor of immunity," this Court has explained, "lest we

cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc).

This Court applies a three-part test for determining whether Section 230 immunity applies. *See Barnes*, 570 F.3d at 1100-01. *First*, the defendant must use or operate "an interactive computer service." *Id. Second*, the claim must "treat[]" the defendant "as the publisher or speaker" of the content at issue. *Id. Third*, that content must be "creat[ed]" or "develop[ed]" by "another information content provider." *Id.* at 1101 & n.6.

## B. The Complaint seeks to hold Apple liable for third-party content available on the App Store

The district court correctly held that the Complaint satisfies all three *Barnes* factors because the App Store is an interactive computer service, the Toast Plus app is third-party content, and the Complaint seeks to "treat[]" Apple "as the publisher" of that content. 47 U.S.C. 230(c)(1). Section 230 therefore forecloses liability.

### 1. The App Store is an interactive computer service

Plaintiffs do not dispute that the first *Barnes* prong is satisfied. *See* Br. 10. Courts have repeatedly held that the App Store is an "interactive computer service[]." *E.g.*, *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp.

3d 975, 980-81, 983 (N.D. Cal. 2015); *see also Coffee v. Google, LLC*, 20-cv-03901-BLF, 2021 WL 493387, at *5 (N.D. Cal. Feb. 10, 2021). As Plaintiffs acknowledge, Apple creates and maintains the App Store as a "virtual marketplace" where it makes third-party apps available to consumers. ER-154 (citing ER-6 (¶¶ 13-15)). The App Store therefore is an "interactive computer service[]."

## 2. The Toast Plus app is third-party content

The third *Barnes* factor—whether the allegedly offending content was provided by a third-party "information content provider"—is also satisfied. *Barnes*, 570 F.3d at 1101. An "information content provider" is an entity "that is responsible, in whole or in part, for the creation or development of information." 47 U.S.C. 230(f)(3). An entity "develop[s]" unlawful content if it "materially contribut[es] to its alleged unlawfulness." *Roommates*, 521 F.3d at 1167-68; *see Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).

Plaintiffs allege that a third party (not Apple) "develope[d]" the Toast Plus app. ER-7 (¶ 23). And the Complaint lacks any factual allegations that Apple "materially contribut[ed]" to the app or its "alleged unlawfulness." *Roommates*, 521 F.3d at 1167-68. "The act for which plaintiffs seek to hold Apple liable is 'allowing the Toast Plus application to be distributed on the App Store' not the development of the app." ER-155 (quoting ER-12; ER-14 (¶¶ 53, 61)). Accordingly, the third *Barnes* factor is satisfied.

Plaintiffs assert in a footnote that they need "discovery into Apple's overall 'vetting' process and the specific process for the Toast Plus app" to determine whether Apple is "responsible for the 'creation or development'" of the app. Br. 13 n.2. But "[a]rguments raised only in footnotes … are generally deemed waived." *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).

In any event, the district court correctly rejected Plaintiffs' argument. *See* ER-155. The Federal Rules of Civil Procedure foreclose a "discovery first, allegations later" approach. *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021). A complaint must include "sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This Complaint fails to do so because it lacks factual allegations that Apple created or materially contributed to the fraudulent aspects of the Toast Plus app. Instead, it alleges that a third party created the app. *See* ER-7-9. Therefore, "another information content provider" created the app. 47 U.S.C. 230(c)(1).

### 3. Plaintiffs' claims seek to treat Apple as the publisher of the Toast Plus app

The district court also correctly held that Plaintiffs' claims seek to treat Apple as the publisher of the Toast Plus app. This Court has found that a claim treats a platform as a publisher if the alleged liability "derives from [the platform's] status or conduct as a 'publisher or speaker.'" *Barnes*, 570

F.3d at 1102. That includes any claims arising from traditional publishing functions, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71. Section 230 applies if "the plaintiff's claims, at bottom, depend[] on a third party's content, without which no liability could have existed." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1094 (9th Cir. 2021).

Another way this Court has determined whether a plaintiff's claim treats a platform as the publisher is to look to what the "underlying legal duty" at issue "actually requires: specifically, whether the duty would necessarily require an internet company to monitor third-party content." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019). Imposing such a duty to monitor would effectively hold the platform liable for failing to block or remove content, and thus would treat the platform as its publisher. *See id.*

This Court rejects "creative pleading" that attempts to "circumvent [Section 230's] protections." *Kimzey*, 836 F.3d at 1265-66. Where, after distilling the claims, plaintiffs "advance the same basic argument that the statute plainly bars"—"that [the defendant] published user-generated speech that

was harmful to [the plaintiffs]"—the claim is foreclosed. *Id.* "[T]here will always be close cases where a clever lawyer could argue that *something* the website operator did encouraged the illegality." *Roommates*, 521 F.3d at 1174 (emphasis in original). Such efforts fail where "the plaintiff's claims, at bottom, depend[] on a third party's content, without which no liability could have existed." *Lemmon*, 995 F.3d at 1094.

The district court correctly held that Plaintiffs' claims seek to treat Apple as the publisher of the Toast Plus app. *See* ER-156. The Complaint expressly seeks to hold Apple liable for "allow[ing] [Toast Plus] to remain in the App Store," and challenges Apple's alleged "failure to take appropriate corrective or remedial action" by removing it from the App Store. ER-4 (¶ 2-3). Indeed, Plaintiffs' specific allegations for each claim reinforce that their gripe is with Apple's publishing activity:

- Plaintiffs' CFAA claim (Count I) seeks to hold Apple liable for "**authorizing** [the Toast Plus app] for distribution on the App Store" and "**allowing** the Toast Plus application to be **distributed** on the App Store." *See, e.g.*, ER-12 (¶¶ 51, 53) (emphasis added).

- Plaintiffs' Federal Wiretap, Maryland Wiretap, and Electronic Surveillance Act claims (Counts II, VI, and VII) seek to hold Apple liable for "**allowing** the Toast Plus application [to be] **distributed** through the App Store" and "causing the 'phishing' or 'spoofing' Toast Plus application to be **published** and **distributed**." *See, e.g.*, ER-14 (¶ 61), ER-22 (¶ 120), ER-23 (¶ 126) (emphasis added).

- Plaintiffs' CCPA claim (Count III) seeks to hold Apple liable for "**failing to prevent**" the third party "exfiltration, theft, or disclosure." ER-16 (¶ 80) (emphasis added).

- Plaintiffs' consumer protection claims (UCL, CLRA, and MCPA) (Counts IV, V, and IX) allege that Apple is responsible for the Toast Plus app for "**offering apps** for download in the App Store" and "fail[ing] to **properly vet** the Toast Plus application before **providing** it to the public." *See, e.g.*, ER-19-20 (¶¶ 102-103) (emphasis added).

- Plaintiffs' Personal Information Protection Act claim (Count VIII) seeks to hold Apple liable for "the **distribution** of the Toast Plus application." ER-25 (¶ 137) (emphasis added).

- Plaintiffs' negligence claim (Count X) seeks to hold Apple responsible for "failing to properly **vet** the Toast Plus application before **providing** it to the public" and for "**failing to remove** Toast Plus from the App Store." ER-27 (¶ 156) (emphasis added).

Each of Plaintiffs' claims thus seek to hold Apple liable for "offering," "authorizing," "allowing," "providing," "distribut[ing]," or "publish[ing]" the Toast Plus app on the App Store, or for "failing to prevent" users from interacting with the content and "failing to remove" it from the App Store. Such conduct is quintessential publishing activity, as it involves "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71. Section 230 therefore applies.

Section 230 also applies because Plaintiffs' claims "depend[] on a third party's content" (the Toast Plus app) "without which no liability could have existed." *Lemmon*, 995 F.3d at 1094. Plaintiffs allege that Toast Plus was a

"spoofing" or "phishing" app created for the purpose of stealing cryptocurrency. *See, e.g.*, ER-4 (¶¶ 2-3). That boils down to a claim about fraud, *see* pp.5-6, *supra*—which is (by definition) a claim that is content-based. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) (observing, in the First Amendment context, that "fraud" is one of the categories of "permitted restrictions upon the content of speech"). If Toast Plus was not fraudulent, Plaintiffs would have no claim against Apple.

An easy way to see that Plaintiffs' claims depend on third-party content is to consider possible changes to the content of the app. If, for example, the app's content were changed so that it (1) did not "mimic[] the real Toast Wallet" app (ER-7 (¶ 23)) and (2) instead candidly stated that the developer would take the user's cryptocurrency if they uploaded their private keys, then Plaintiffs would have no claim because there would be no fraud. The app would work exactly as advertised. *See Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 695 (5th Cir. 2020) ("[W]ithout a misrepresentation, there can be no fraud."). Plaintiffs' effort to hold Apple liable thus inextricably depends on the *content* of Toast Plus, a third-party app.

Similarly, Plaintiffs' theory would necessarily impose a duty on Apple to monitor and remove third-party content to avoid liability. *Doe v. Internet Brands*, 824 F.3d 846, 851 (9th Cir. 2016). Indeed, Plaintiffs allege outright

that Apple had a "dut[y]" to "remove Toast Plus from the App Store." ER-27 (¶ 156). Under Plaintiffs' theory, if Apple failed to catch even a single "spoofing" or "phishing" app—an app that is designed to conceal its true purpose—Apple would be liable for the harm caused by that third-party fraud. Apple thus would effectively be held liable for making the app available to the public. Moreover, continuously monitoring nearly two million apps—and the behavior of all of those third-party developers inside their apps—may not even be possible, and at a minimum would require expenditure of immense resources. That would create a powerful disincentive against publishing third-party content, thus flouting Section 230's text and contravening its animating purpose. *See* p.30, *infra*.

### C. Plaintiffs' contrary arguments are meritless

#### 1. Plaintiffs' consumer protection and negligence claims depend on third-party content, not any alleged Apple statements

Plaintiffs assert that their consumer protection and negligence claims (Counts IV, V, IX, and X) are predicated on Apple's alleged statements as to "the safety and security of the apps in the App Store," and that Section 230 does not apply to Apple's own speech or conduct. Br. 10-12. As Plaintiffs see it, Apple "warranted for fitness" *all* the apps on the App Store. Br. 19.

But, as the district court correctly observed, that is merely attorney argument that "does not reflect what [Plaintiffs] have alleged." ER-157. "There

is a definite distinction between a fraudulent representation and a warranty," *A. A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144, 153 (1970), and the Complaint does not assert any claims based on breach of warranty. Nor could it. "A warranty is a contractual promise from the seller that the goods conform to the promise." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006). Apple did not provide a warranty—it affirmatively *disclaimed* a warranty, stating in the contract with Plaintiffs that there is "NO WARRANTY," and that use of an app is at the user's "SOLE RISK," that apps are provided "AS IS," and that the user waives any claim for "DAMAGES" "ARISING OUT OF OR RELATED TO" the use of an app. ER-70-71 (§ G(e) and (f)); ER-84-85 (§ G(e) and (f)).

This case is thus fundamentally unlike a breach of warranty case. In such a case, "the duty … allegedly violated [would] spring[] from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant." *Barnes*, 570 F.3d at 1107. When entering into a contract, a party "agree[s] to depart from the baseline rules (usually derived from tort or statute) that govern the mine-run of relationships between strangers," including Section 230's "baseline rule" of "no liability for publishing or speaking the content of other information service providers." *Id.* at 1108-09.

By contrast, Plaintiffs do not, and cannot, bring a contract claim. Apple plainly did not intend that a court enforce a warranty of third-party apps in

contravention of Section 230's baseline rule. The Terms are a binding contract that say the exact opposite.

Plaintiffs' claims in turn do not rest "*solely* on Apple's own misrepresentations." Br. 12. As the district court explained, "[t]hroughout their pleading, plaintiffs repeatedly avoid basing their claims solely on Apple's representations of App Store safety, instead contending that it is the combination of Apple's representations along with its review and publication of apps on the App Store that underlies the company's liability." ER-157. Plaintiffs' claims depend on third-party content (the "spoofing" app) and Apple's review and publication of that app. *See* pp.20-21, *supra*; *see also Beckman v. Match.com, LLC*, 668 F. App'x 759, 759-60 (9th Cir. 2016) (affirming dismissal of misrepresentation claims where the "basis for each of those claims [wa]s [defendant]'s role as a publisher of third-party information").

For example, the UCL claim (Count IV) is not limited solely to Apple's statements about the App Store. Instead, it is based on "[t]he business acts, omissions, and practices alleged herein above"—that is, all of the allegations in the Complaint, including those about the Toast Plus app, Apple's monitoring efforts, and Apple allowing the app on the App Store. ER-18 (¶ 93). Similarly, the CLRA claim (Count V) and negligence claim (Count X) specifically challenge Apple's monitoring and "fail[ure] to remove Toast Plus from the App Store after learning of its dangerous nature." ER-20 (¶ 103). And the

MCPA claim (Count IX) is tied to "the Toast Plus application in specificity." ER-26 (¶ 148). All of those counts thus depend on the Toast Plus app and Apple's review and publication of that content on the App Store.

The class definition further reinforces that Plaintiffs' claims are not limited "solely" to Apple's alleged representations. The class Plaintiffs seek to represent is defined as:

> All persons who downloaded or otherwise used Toast Plus from the Apple Store within the relevant statutory period and suffered actual loss of cryptocurrency as a result, regardless of the amount of lost cryptocurrency.

ER-9 (¶ 39). That class does not even mention any alleged representations by Apple. Rather, it identifies third-party content (the Toast Plus app) and reaches all people who suffered losses as a result of using it. The only connection between Apple and the alleged fraud is that the app was available "from the Apple Store." *Id.*

Plaintiffs' conclusory allegations about Apple's misrepresentations are thus "inextricably intertwined" with "Apple's conduct in publishing the Toast Plus app." ER-157. Each of Plaintiffs' claims boils down to a contention that a third-party "spoofing app"—*i.e.*, an app with fraudulent content—was available on the App Store and harmed the Plaintiffs. If the app's content were different, there would be no basis for holding Apple liable. *See* p.22, *supra*. Apple's liability depends on third-party content, and Plaintiffs' theory

would necessarily impose a duty on Apple to monitor. Apple is therefore "perforce immune" under Section 230. *Roommates*, 521 F.3d at 1170-71.

Plaintiffs contend (Br. 12) that *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840 (N.D. Cal. 2012), "rejected the exact theory" that the district court relied upon below. But the theory in *Pirozzi* was different: The complaint in *Pirozzi* did not even identify a particular third-party app with allegedly tortious content. Instead, the complaint alleged that (1) Apple had represented that its devices "prevent[ed] unauthorized access"; (2) those representations induced the plaintiff to purchase an Apple device and download apps; and (3) Apple "failed to safeguard Plaintiff's personal information," which was "vulnerable to unauthorized access." *Id.* at 845-46. The district court held that the plaintiff lacked standing, failed to plead fraud with particularity, and failed otherwise to state a claim. *See id.* at 847-52. But "based on the scant record," the court stated it would be "premature" to decide whether Apple was entitled to Section 230 immunity. *Id.* at 849.

That statement, made by a district court after dismissing the case for lack of jurisdiction and therefore dictum, does not support Plaintiffs' position. Unlike *Pirozzi*, this Complaint is about a specific app—Toast Plus—and harm caused because of its content—namely, that it was a "'spoofing' or 'phishing' program." *E.g.*, ER-4 (¶ 2). The Complaint avowedly seeks to hold Apple liable for losses caused by that content. *E.g.*, ER-18 (¶ 96). Plaintiffs

seek to represent a class that consists of all people who "downloaded or otherwise used" that app and suffered losses as a result. ER-9 (¶ 39). And the Complaint is replete with allegations that Apple inadequately monitored and failed to remove that app specifically. *E.g.*, ER-20 (¶ 103). The Complaint thus establishes that Section 230 applies, as the claims against Apple all depend on that third-party content.[2]

### 2. Plaintiffs' arguments about hacking and privacy depend on third-party content

Plaintiffs assert that Section 230 does not preclude its CFAA (Count I) and Electronic Communications Privacy Act (Count II) claims. Br. 15. But Plaintiffs' own briefing confirms that Section 230 applies. Plaintiffs describe those claims as alleging: (1) the "Toast Plus application is designed to exceed the authorization that users agree to because it is a 'phishing' and 'spoofing' app," and (2) "Apple knew of the fraudulent purpose of Toast Plus prior to allowing it to be distributed on the App Store because of its 'rigorous vetting process.'" Br. 15-16; *see id.* ("[T]he app in question did not do what it was advertised on the App Store to do.").

---

[2] Plaintiffs' reliance (Br. 13) on Apple's Motion to Dismiss in *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014), is similarly misplaced. That is a later decision in the same lawsuit as *Pirozzi. See id.* at 1037 n.6. In any event, the district court in *Opperman* agreed that Section 230 would bar allegations similar to those present here, namely, "that Apple has failed to remove offending apps from the App Store." *Id.* at 1044 n.12.

Such a claim boils down to a theory that Apple is liable for the third-party content—the "phishing" and "spoofing" app that "did not do what it was advertised … to do"—because Apple allowed this app to be distributed on the App Store and failed to remove it, notwithstanding its "rigorous vetting process." As this Court has explained, a plaintiff cannot "escape section 230(c) by labeling as a 'negligent undertaking' an action that is quintessentially that of a publisher." *Barnes*, 570 F.3d at 1102-03. Distributing the app publicly without removing it is quintessential publishing activity. Section 230 therefore applies to all of Plaintiffs' claims.

## D. Section 230's core purpose is to prevent claims like this

Plaintiffs' efforts to use Apple's statements about the App Store's safety to circumvent Section 230 also conflict with the statute's core purpose.

Before Congress enacted Section 230, courts had held that platforms were not liable for third-party content if they never monitored the content they hosted, *e.g.*, *Cubby, Inc. v. CompuServe Inc.*, 776 F. Supp. 135, 141-43 (S.D.N.Y. 1991), but could become liable if they monitored content to remove offensive posts yet failed to block or remove the allegedly tortious content at issue, *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710, at *4-5 (N.Y. Sup. Ct. May 24, 1995). In particular, in *Stratton Oakmont*, the court held that an online service provider (Prodigy) could be held responsible for libelous statements posted on its bulletin board because of "Prodigy's *stated*

*policy* … that it was a family oriented computer network." 1995 WL 323710 at *2, *5 (emphasis added); *see Batzel v. Smith*, 333 F.3d 1018, 1029 (9th Cir. 2003) ("[T]he court relied on the fact that Prodigy held itself out as a service that monitored its bulletin boards for offensive content and removed such content."). Efforts to protect users from offensive content—and to tell the public about those efforts—were thus used as a sword to hold platforms liable. That created a perverse incentive to (1) weaken or abandon monitoring (making platforms less safe); or (2) unduly restrict third-party content (thus impeding creativity).

Congress enacted Section 230 to avoid that dilemma and thereby protect the broader public interest. "Congress adopted [Section] 230(c) to overrule the decision of a New York state court in *Stratton Oakmont*," *Batzel*, 333 F.3d at 1029, which Congress saw as creating a perverse incentive for platforms to take a hands-off approach to user content, *see* H.R. Rep. No. 104-458, at 194 (1996) (Conf. Rep.) (describing it as a "specific purpose[]" of Section 230 to override *Stratton Oakmont*).

Plaintiffs' "misrepresentation" claims are materially identical to the claims in *Stratton Oakmont*. As Plaintiffs see it, Apple's liability is based on (1) statements that the App Store is "safe," much like Prodigy's description of itself as "family oriented"; coupled with (2) Apple's failure to block or remove particular third-party content (an app) that was allegedly harmful,

much like Prodigy's failure to block the allegedly defamatory post. Plaintiffs are thus seeking to hold Apple liable because of its "stated policy"—that Apple monitors the App Store to ensure that it is safe and trusted—yet failed to remove the allegedly tortious content. That is the same theory *Stratton Oakmont* adopted and that Congress rejected in enacting Section 230.

Plaintiffs' so-called "misrepresentation" claims in turn would put Apple to the very dilemma Congress enacted Section 230 to eliminate. Platforms like Apple that expend significant resources to monitor and filter content will often inform consumers of those efforts to derive goodwill from customers for their efforts and to compete with other platforms in part through their different approaches to monitoring. *Cf. Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 987 (9th Cir. 2023) ("[U]sers are free to decide which kind of app-transaction platform to use. Users who value security and privacy can select (by purchasing an iPhone) Apple's closed platform.").

If a platform could not promote its monitoring efforts without creating a risk of liability in the event that its monitoring did not always perfectly succeed in blocking all allegedly harmful third-party content, then that would undercut the incentive to expend resources for monitoring. Instead, it would create perverse incentives to *reduce* spending on monitoring, leading to a reduction in the overall safety and security of the platform, or to unduly restrict third-party content to avoid the risk of liability. Putting Apple, or

any other "information content provider," to that dilemma would violate both the text and animating purpose of Section 230. This Court should thus affirm the district court's conclusion that Section 230 applies.

## II. Apple's Terms and Conditions also bar Plaintiffs' claims

Not only does Section 230 bar all of Plaintiffs' claims, but also Apple's Terms bar them as well. ER-160.

### A. The Terms unequivocally bar Plaintiffs' claims

Plaintiffs do not dispute that their use of the App Store is subject to Apple's Terms. ER-9 (¶ 35). Those Terms state that Apple provides "NO WARRANTY" and that the user acknowledges and agrees that use of an app is at their "SOLE RISK" and any services performed or provided by an app are "AS IS." ER-70-71 (§ G(e)); ER-84 (§ G(e)). The next provision forecloses "DAMAGES" "ARISING OUT OF OR RELATED TO" the use of an app. ER-71 (§ G(f)); ER-84-85 (§ G(f)). Such provisions "have long been recognized as valid" under California law. *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 816 (N.D. Cal. 2021) (quoting *Markborough Calif., Inc. v. Superior Ct.*, 227 Cal. App. 3d 705, 714 (1991)); *see also, e.g.*, *Wheeler v. Oppenheimer*, 140 Cal. App. 2d 497, 499 (1956) ("[The] validity of [such clauses] is not open to doubt.").

These provisions foreclose all of Plaintiffs' claims. Plaintiffs are effectively seeking to hold Apple liable for purportedly providing a warranty for

every app on the App Store. *See* Br. 19. Indeed, Plaintiffs even describe Apple as having "warranted for fitness" the apps on the App Store. *Id.* But Apple has unequivocally stated the exact opposite: there is "NO WARRANTY" and no "DAMAGES" arising out of or related to use of any app. ER-70-71 (§ G(e) & (f)); ER-84-85 (§ G(e) & (f)). The district court thus correctly held that Apple's Terms foreclose Plaintiffs' claims. ER-160.

## B. Plaintiffs' counterarguments lack merit

Plaintiffs contend that their statutory claims are "unwaivable" on the theory that they are seeking to hold Apple liable for its "own false and misleading representations," Br. 25, "not the conduct of third parties," *id.* at 24. They invoke statutes under which otherwise valid contracts may be void and unenforceable if they are illegal, *see id.* at 25 (citing Cal. Civ. Code § 3513), or "exempt anyone from responsibility *for his own* fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent," *id.* (citing Cal. Civ. Code § 1668).

But as the district court correctly held, that argument fails out of the gate because the Complaint does not seek to hold Apple liable for its *own* fraud or violation of the law. The Complaint attempts to hold Apple liable for

*an alleged fraud perpetrated by a third party.*[3] Again, the proposed class definition is telling: It does not even mention Apple's alleged misrepresentations. It reaches all individuals who lost cryptocurrency because they downloaded and used the third-party app. ER-9 (¶ 39). Plaintiffs thus are seeking to hold Apple liable for the alleged fraud perpetrated by a third party. The Terms validly foreclose liability for that third-party tort.

The district court's decision in *Barrett* is instructive. The *Barrett* court held that the disclaimer of liability in Apple's Terms foreclosed claims against Apple brought by victims of a third-party scam, explaining that Apple's Terms "do[] not attempt to avoid California unfair competition statutes or otherwise contract around the law." *Barrett*, 523 F. Supp. 3d at 1154-55. Third-party scammers had allegedly tricked the *Barrett* plaintiffs into purchasing iTunes and App Store gift cards that could be redeemed for digital content offered through Apple's online stores. Plaintiffs tried to hold Apple liable, arguing that the limitation of liability provision was unenforceable because it "attempt[ed] to disclaim liability for intentional conduct or violation of law." *Id.* at 1155 (internal quotation marks omitted).

The district court rejected that contention. Plaintiffs had "fail[ed] to establish that the disclaimer [wa]s substantively unconscionable" because

---

[3] Plaintiffs do not allege that Apple is liable for aiding and abetting fraud. Any such claim would fail as a matter of law. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 498-503 (2023).

"Plaintiffs fail[ed] to allege that Apple [was] aiding and abetting third-party tortfeasors or [wa]s otherwise liable for third-party tortfeasors." *Id.* The court also held that the plaintiffs had failed to adequately plead that "Apple made any affirmative misrepresentation (or fraud by omission)." *Id.* at 1154. And although the complaint identified various alleged misrepresentations by Apple, Plaintiffs had failed to plead reliance or causation. *See id.* at 1150 ("Plaintiffs do not allege that they visited the website, read the [allegedly false] disclaimer, or knew about Apple's communications with news media— either before or after they purchased the iTunes gift cards.").

The Complaint here fails for all those same reasons—and more. First, as in *Barrett*, a third party allegedly scammed Plaintiffs, yet they are trying to hold Apple liable for that third party's misconduct. But Apple's Terms disclaim liability for losses caused by third-party wrongdoing, and instead provide that Plaintiffs' use of an app like Toast Plus is at Plaintiffs' "SOLE RISK." *See* ER-70 (§ G(e)).[4]

---

[4] In *Barrett II*, the court allowed two of plaintiffs' claims to proceed notwithstanding the disclaimer of liability in Apple's Terms. *See Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2022 WL 2119131, at *7-8, (N.D. Cal. June 13, 2022)*, reconsideration denied*, No. 20-CV-04812-EJD, 2023 WL 3977633 (N.D. Cal. June 13, 2023). Those claims alleged that Apple *itself* had engaged in conversion and had unlawfully received stolen property. *Id.* at *12. Apple vigorously disputes those allegations, but they have no parallel in this case and thus the district court's decision in *Barrett II* is inapposite.

Second, as in *Barrett*, the Complaint fails to plead reliance or causation. The class definition does not even mention Apple's representation about the safety of the App Store. ER-9 (¶ 39). And the allegations about the named Plaintiffs—as well as the class allegations—are similarly silent on reliance and causation. They do not address whether they visited Apple's website, read the statement about the safety of the App Store, and much less allege that they relied on those statements in downloading the Toast Plus app and thereafter uploading their cryptocurrency keys. *See* ER-7-9 (¶¶ 24-38).[5]

Third, and more fundamentally, the Complaint's allegations establish that Apple did not make any "representations as to the fitness, useability, and safety *of the applications in the App Store.*" Br. 24 (emphasis added). Apple did not provide a "warrant[y] of fitness" (Br. 19) or any other representation about the fitness of any particular app, because the Terms expressly disclaim such a warranty or representation (ER-70). Plaintiffs also did not, and could not, seek to dispute Apple's statements about the safety of the App Store as a whole. Their allegations discuss only a single app, but the Complaint alleges that "nearly two million apps" are available. ER-6 (¶ 14). Instead, as discussed above, *see* p.21, *supra*, the Complaint seeks to hold Apple

---

[5] The Complaint includes a single conclusory assertion that the Plaintiffs "relied" on Apple's alleged statements. ER-4 (¶ 2). But legal conclusions "are not entitled to the assumption of truth"; "they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. There are no such factual allegations of reliance or causation here.

liable for the fraud *of the Toast Plus app itself*. That is the wrongdoing of a third party, not Apple. The Terms are therefore valid and foreclose all of Plaintiffs' claims.

## III. Plaintiffs independently fail to state any plausible claims

In addition to being barred by both Section 230 *and* the Terms, the Complaint fails on its merits for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### A. Plaintiffs' consumer protection claims fail

#### 1. Rule 9(b) applies

The district court correctly held that Plaintiffs' consumer protection claims failed because they sound in fraud but fail to satisfy Federal Rule of Civil Procedure 9(b)'s requirement of pleading fraud with particularity. *See* ER-152 (citing *Kearns*, 567 F.3d at 1125). Rule 9(b) requires a complaint to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This includes 'the who, what, when, where and how of the misconduct charged,'" and identifying "'what is false or misleading about a statement.'" *Becerra*, 945 F.3d at 1228 (citations omitted).

Plaintiffs assert that Rule 9(b) does not apply. Br. 21. But this Court has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations" of the laws at issue, the Consumers Legal Remedies Act and Unfair Competition Law. *Kearns*, 567 F.3d at 1125; *see also Block v.*

*eBay, Inc.,* 747 F.3d 1135, 1140 (9th Cir. 2014)). Plaintiffs failed to mention *Kearns,* and Plaintiffs therefore forfeited any argument that the district court erred in following that decision's holding. *See Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1542 (9th Cir. 1986) ("A lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless.").

Plaintiffs instead invoke *In re Tobacco II Cases,* 46 Cal. 4th 298 (Cal. 2009), to argue that Rule 9(b)'s heightened standard does not apply. Br. 21. But *Tobacco II* is inapposite for multiple reasons. First, this Court decided *Kearns* after *Tobacco II,* so *Kearns* remains controlling. Second, as the California Court of Appeal explained in *Pfizer Inc. v. Superior Court,* 182 Cal. App. 4th 622 (2010), the *Tobacco II* exception is limited to misrepresentations that are part of a long-term and extensive advertising campaign like the decades-long campaign engaging in "saturation advertising" targeting adolescents in *Tobacco II. Pfizer,* 182 Cal. App. 4th at 633-34. There are no comparable allegations here. Rule 9(b) therefore applies.

### 2.  The Complaint fails to plead fraud with particularity

The district court correctly held that the Complaint failed to satisfy Rule 9(b) (ER-157), because it does not "set forth what is false or misleading" about Apple's alleged representations that the App Store is a "safe and trusted place to discover and download apps," *Becerra,* 945 F.3d at 1228 (quoting *In*

*re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)); *see* ER-6 (¶ 14); ER-158. The Complaint includes allegations only about a single app, but the Complaint itself alleges that it is only one out of "nearly two million" apps. ER-6 (¶ 14). It further alleges that hundreds of dedicated experts engage in "a rigorous vetting process," ER-6 (¶ 18), through which over 1 million apps have been rejected, ER-20 (¶ 102). Plaintiffs then offer nothing more than vague and conclusory assertions that Apple's statement is false, which falls far short of Rule 9(b)'s demanding standard.

Moreover, UCL and CLRA claims "are governed by the reasonable consumer test," requiring Plaintiffs to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted). Yet courts have repeatedly held that broad statements that are accompanied by express disclaimers of any warranty or guarantee do not deceive reasonable consumers. *See, e.g.*, *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186 (N.D. Cal. 2021); *Hoai Dang v. Samsung Elecs. Co.*, 14-cv-00530, 2018 WL 6308738, at \*8 (N.D. Cal. Dec. 3, 2018), *aff'd*, 803 F. App'x 137 (9th Cir. 2020).

District courts in turn routinely reject complaints that attempt to raise such claims. *See, e.g.*, *Ahern*, 411 F. Supp. 3d at 559; *Palmer*, 2016 WL 1535087, at \*5. For example, in *Ahern*, the court dismissed a UCL claim challenging Apple's advertisement that its products underwent "rigorous

testing methods that simulated customers' experiences." 411 F. Supp. 3d at 558. The *Ahern* plaintiffs alleged they had purchased Apple computers in reliance on those statements, and claimed the statements were misleading because the computers contained a defect that caused smudging to appear in the corners of the screens. *Id.* at 550. The court found that plaintiffs failed to "plead 'what [wa]s false or misleading about [the] statement, and why it [wa]s false.'" *Id.* at 559 (quoting *GlenFed*, 42 F.3d at 1548). "That some Apple products suffered from the alleged defect," the court explained, "does not demonstrate that Apple made any misrepresentation of fact in stating that the products were rigorously tested with methods that simulated customers' experiences." *Id.* (cleaned up). That same logic applies here.

Additionally, "a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL [or CLRA] action must demonstrate actual reliance.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) (citation omitted); *see In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014). As set forth above, the Complaint fails to adequately plead reliance, providing yet another basis for dismissal. *See* p.36, *supra*.

Plaintiffs contend that they "identified actionable omissions." Br. 20. Not so. "'[T]o be actionable[,] the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*.'" *Hodson v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir.

2018) (quoting *Daugherty*, 144 Cal. App. 4th at 835). The Complaint, however, fails to identify with particularity an omission that was "contrary to a representation actually made by the defendant," or any fact that Apple had a duty to disclose. *Id.* Rather, Plaintiffs' omission theory (Br. 23-24) rehashes the same claim that Apple engaged in "rigorous" monitoring, Apple "allowed" Toast Plus "to remain in the App Store," and Apple "failed to remove" it. That is simply a repackaged claim that Apple should be liable for the third-party fraud because the Toast Plus app was available on the App Store.

Plaintiffs fare no better by asserting that Apple "failed to warn Plaintiffs and Class Members of the danger of the application." Br. 23. That is not a failure to warn of Apple's own fraud or misconduct. It is an asserted failure to warn of *a third-party's fraud*. Apple has "no duty to control the conduct of another, and no duty to warn those who may be endangered by such conduct." *Peterson v. S.F. Cmty. Coll. Dist.*, 36 Cal. 3d 799, 806 (1984). Indeed, Apple has provided express disclaimers that plainly and conspicuously warn consumers that use of any third-party app or external services is at their own risk. *See* ER-70 (§ G(e)).

Moreover, a defendant only has a duty to disclose "when the fact is known to the defendant and the failure to disclose it is misleading in light of other facts." *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1258 (2018), *as modified on denial of reh'g* (Feb. 22, 2018); *see Ahern*,

411 F. Supp. 3d at 564-66 (requiring knowledge "at the time of sale"). Plaintiffs do not allege that Apple knew the Toast Plus app was a "spoofing" or "phishing" app at the time Plaintiffs downloaded it. As alleged, the fraud occurred after the download, and indeed after Plaintiffs had already used the apps to upload their cryptocurrency keys. The Complaint thus falls short of the Rule 9(b) standard for numerous reasons.

### 3. The consumer protection claims fail for additional reasons

Plaintiffs' allegations fail to establish statutory standing under the CLRA. The CLRA applies to "a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). But Plaintiffs do not allege that Apple sold or leased the Toast Plus app. Indeed, Plaintiffs do not allege that *any* "sale or use" occurred. They allege that the download and use of the app was free—and an action within an app that is downloaded for free "does not qualify as the purchase of a good or service under the CLRA." *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *10 (N.D. Cal. Jan. 10, 2022); *see also, e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (similar); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (similar). The CLRA is therefore inapplicable.

Plaintiffs' UCL claims also fail for independent reasons. With respect to the "unlawful" prong, Plaintiffs rely on an alleged violation of the California

Consumer Privacy Act (CCPA) (Count III). ER-18 (¶¶ 92-93). But the CCPA cannot serve as a predicate for UCL claims, *see* Cal. Civ. Code § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law."), and regardless only applies to "California resident[s]," Cal. Civ. Code § 1798.140(i). Neither Plaintiff is a California resident. Plaintiffs also fail to state a claim for any other predicate violation. *See* pp.44-50, *infra*. "A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law." *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).

Nor have Plaintiffs alleged any conduct to support a claim for violation of the "unfairness" prong. California courts have recognized three tests for determining "unfair" conduct, but the Complaint is devoid of factual allegations to support any of those tests. First, the Complaint lacks allegations that Apple's conduct offends "'public policy' that is 'tethered' to a specific constitutional, statutory, or regulatory provision." *Epic*, 435 F. Supp. 3d at 1050 (quoting *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 853 (2002)). Second, the Complaint lacks allegations that Apple's conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1089 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018). Third, the Complaint lacks allegations

that Plaintiffs' injury is substantial, is "not [] outweighed by any countervailing benefits to consumers or competition," and "is not an injury the consumers themselves could reasonably have avoided." *Smith v. LG Elecs. U.S.A., Inc.*, C 13-4361 PJH, 2014 WL 989742, at *9 (N.D. Cal. Mar. 11, 2014). Plaintiffs' consumer protection claims thus fail to state a claim for numerous independent reasons.

### B. Plaintiffs' remaining claims fail

The Complaint also fails to state a claim under the Computer Fraud and Abuse Act (CFAA) (Count I), the Electronic Communications Privacy Act ("Federal Wiretap Act") and the Maryland Wiretapping & Electronic Surveillance Act (Counts II, VI, and VII), Maryland's Personal Information Privacy Act ("PIPA") (Count VIII), and for negligence (Count IX).

#### 1. The CFAA claim fails because the Complaint does not allege that Apple engaged in hacking

"The CFAA is an anti-hacking statute that creates liability where a defendant 'intentionally accesses a computer without authorization or exceeds authorized access,' and thus obtains 'information from any protected computer' or financial records." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 128 (N.D. Cal. 2020) (quoting 18 U.S.C. 1030(a)). The defendant must "engage in the hacking, not merely benefit from its results," *Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*, No. 14-cv-02737-BLF, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015) (citing *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir.

2012) (en banc)), and must do so with the "intent to defraud," *United States v. Nosal*, 844 F.3d 1024, 1032-33 (9th Cir. 2016).

Plaintiffs have not alleged that Apple engaged in the purported hacking, and much less that Apple did so with intent to defraud. Indeed, Plaintiffs' CFAA claim is fundamentally baseless because Plaintiffs voluntarily downloaded the Toast Plus app and voluntarily uploaded their cryptocurrency keys. *See In re Sony PS3*, 551 F. App'x at 923 ("Because Plaintiffs voluntarily installed the relevant software update, Plaintiffs cannot allege actionable 'access' under the CFAA."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1068 (N.D. Cal. 2012) (similar).

Plaintiffs argue that "Apple exceed[ed] the authorization that was given, because the [Toast Plus] app … did not do what it was advertised on the App Store to do, which Apple knew prior to distributing it to unknowing users." Br. 16 (emphasis omitted). But that theory fails at every level. The CFAA defines "exceeds authorized access" to mean "'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'" *Nosal*, 676 F.3d at 856 (quoting 18 U.S.C. 1030(e)(6)). Plaintiffs do not allege that Apple obtained or altered information it was not entitled to obtain. Indeed,

Plaintiffs do not allege that Apple obtained or altered any information. Rather, third parties obtained that information because Plaintiffs voluntarily uploaded their information to the third-party app. ER-8 (¶ 29); ER-12 (¶ 50).

Plaintiffs rely (Br. 16) on *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075 (N.D. Cal. 2018), but this case is not remotely similar. There, the court found that plaintiffs could proceed with a CFAA claim alleging that HP remotely installed a firmware update that disabled printers from using third-party ink cartridges. The court emphasized that "HP neither sought nor obtained Plaintiffs' consent to access their printers." *Id.* at 1085. "HP [also] did not notify Plaintiffs that it planned to 'push' th[e] update," and "HP purposely concealed that it had accessed the printers to install disabling firmware." *Id.* By contrast, the Complaint lacks any allegations that Apple accessed Plaintiffs' Toast Plus accounts. Instead, Plaintiffs voluntarily downloaded the third-party app and then voluntarily uploaded their information to it. And Apple is not responsible for a third-party's misconduct.

Nor have Plaintiffs alleged that Apple acted with the requisite intent. Plaintiffs assert that "Apple knew of the fraudulent purpose of Toast Plus prior to allowing it to be distributed on the App Store because of its 'rigorous vetting process.'" Br. 15-16. But that conclusory allegation is insufficient to establish knowledge because the more plausible inference is that Apple's "rigorous vetting process" did not succeed in ferreting out the third-party

fraud. *Cf. Twombly*, 550 U.S. at 555. The Complaint fails to plausibly suggest that Apple knew at the time of the downloads that the app was a spoof. *See* pp.41-42, *supra*. And even if Apple were aware, that knowledge would not establish that Apple itself "inten[ded] to defraud." Indeed, that would describe Apple as essentially a bystander whose relationship with the third-party wrongdoer is no different than the "arm's length, passive, and largely indifferent" relationship Apple has with the millions of other app developers to whom it provides the same service. *Twitter*, 598 U.S. at 500. That fails as a matter of law to impute the fraud to Apple. *See id.* at 505.

### 2. The Wiretap claims fail because the Complaint does not allege that Apple intercepted any information

For similar reasons, Plaintiffs have failed to state a claim under the Federal and Maryland Wiretap Acts. To state a claim under the Federal Wiretap Act, Plaintiffs must plead that Apple (1) intercepted, disclosed, or used information from a communication knowing that it was unlawfully intercepted, and (2) acted with intent. *See* 18 U.S.C. 2511(1)(a); 18 U.S.C. 2520. The Maryland Wiretap Act mirrors the Federal Wiretap Act. *Compare* Md. Code Ann. § 10-402(a)(1), *with* 18 U.S.C. 2511(1). Plaintiffs' wiretap claims fail as a matter of law because the Complaint does not allege interception or intent.

The Complaint does not allege that Apple intercepted any communication. Nor does it allege that Apple disclosed any intercepted information. Indeed, the Complaint does not allege that *any* third party intercepted information. Rather, it alleges that Plaintiffs voluntarily shared their information with the Toast Plus app. *See, e.g.*, *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1030 (N.D. Cal. 2014) (no interception where "the transmission of those messages was entirely [plaintiff's] doing").

Plaintiffs argue that Apple is liable because Plaintiffs downloaded the Toast Plus app "*from Apple*." Br. 17 (citing ER-4; ER-7 (¶¶ 2, 22)). But Plaintiffs cite no case to "support the imposition of Wiretap Act liability on a party who merely provided a means through which a third party subsequently intercepts communications." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015). "To the contrary, authority has consistently rejected such a theory of liability." *Id.* (citing cases). And here, because Apple did not even "provide[] a means through which a third party subsequently intercept[ed] communications." *Id.* The Complaint fails to allege any interception at all.

Plaintiffs' failure to plead intent also dooms their wiretap claims. The Wiretap Act requires that a person act "intentionally" in intercepting or disclosing intercepted information. 18 U.S.C. 2511(1)(a)-(d); *see Sunbelt Rentals*, 43 F. Supp. 3d at 1030. Intent requires the interception to have been "purposeful[] and deliberate[]." *United States v. Christensen*, 828 F.3d 763,

774 (9th Cir. 2015). As with the CFAA claim, *see* p.45, *supra*, Plaintiffs assert that "Apple knew [] it was publish[ing] a fraud" because it went through a "rigorous vetting process," Br. 17-18. But that conclusory allegation fails for the same reason here. *See* pp.46-47, *supra*. Regardless, even if Apple knew of the fraud, that would not establish Apple's own intent to intercept, and thus the claim would still fail as a matter of law. *See Sunbelt Rentals*, 43 F. Supp. 3d at 1030.

### 3. Plaintiffs' privacy claims fail because the alleged harm has nothing to do with Apple's practices for securing its own data

Diep's claim for violation of the Maryland Personal Information Protection Act (PIPA) likewise fails for multiple reasons. *First*, there is no independent cause of action under that statute. The plaintiff must establish "an unfair or deceptive trade practice" within the meaning of the Maryland Consumer Protection Act that "is subject to the enforcement and penalty provisions contained in" the MCPA. Md. Code Ann., Com. Law § 14-3508; *see Johnson v. Balt. Police Dept.*, No. 18-cv-2375-SAG, 2021 WL 1610152, at *5 (D. Md. Apr. 23, 2021) (recognizing that dismissal is appropriate where the relevant Maryland statutes do not provide for a "separate and distinct cause of action").

*Second*, even if Diep has properly asserted a claim for violation of the MCPA, that claim would still fail as a matter of law. To state such a claim, a

plaintiff must allege that a business failed to (i) "implement and maintain 'reasonable security practices and procedures' based on the personal information they collect," or (ii) "notify, as soon as practicable, the owner … of the personal information of the breach of the security of a system." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 454-55, 487 (D. Md. 2020); Md. Code Ann., Com. Law § 14-3504(c)(1). But this case has nothing to do with Apple's practices to secure data it collects, or a breach of Apple's systems. Plaintiffs allege that they voluntarily gave their information to Toast Plus, and it was Toast Plus that stole their cryptocurrency. *E.g.*, ER-7-8 (¶¶ 24-29). Apple's practices for securing its own data are thus irrelevant, and Plaintiffs' privacy claims fail as a matter of law.

### 4. Plaintiffs' negligence claim fails because Apple's Terms foreclose the duty of care

Finally, Plaintiffs fail to state a claim for negligence for multiple independent reasons. *First*, the "economic loss rule" bars Plaintiffs claims because Plaintiffs' alleged loss is purely economic and arises from their relationships with Apple through an agreement (*i.e.*, the Terms). Under California law, a consumer cannot recover in negligence "'for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'" *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1064; *see Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979,

988 (2004). The remedy for such losses would be a contract claim, but Plaintiffs have not raised (and could not raise) a contract claim because Apple expressly *disclaimed* any guarantee or warranty. *See* p.32, *supra*.

*Second*, and in addition, Apple did not owe Plaintiffs a duty of care. Apple provided express disclaimers that plainly and conspicuously warned consumers that use of any third-party app or external services, such as the Toast Plus app, was at Plaintiffs' risk. *See* ER-70 (§ G(e)). That negates any duty of care: "By an express assumption of risk, the potential plaintiff agrees not to expect the potential defendant to act carefully, thus eliminating the potential defendant's duty of care." *See R.H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1166 (N.D. Cal. 2014) (collecting cases); *Von Beltz v. Stuntman, Inc.*, 207 Cal. App. 3d 1467, 1477 n.3 (1989) (holding that express assumption of risk bars recovery).

Indeed, even without the disclaimer, Apple still would not owe a duty to prevent the third-party fraud. Although Apple takes great pride in the security and privacy measures of the App Store, "there is no general duty to protect against the conduct of another in the absence of a special relationship. As such, courts have consistently refused to impose a duty of care in the context of financial transactions involving fraud and identity theft." *Diaz v. Intuit, Inc.*, 5:15-CV-01778-EJD, 2018 WL 2215790, at *5 (N.D. Cal. May 15, 2018) (citation omitted). Plaintiffs' negligence claims thus fail for multiple

reasons, above and beyond Section 230 and the limitation of liability provision in the Terms.

## IV. Amendment would be futile

In light of the foregoing, the district court did not abuse its discretion in dismissing the First Amended Complaint with prejudice, *see* ER-160, because amendment would be futile, *see Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001). Plaintiffs cannot circumvent Section 230 or Apple's Terms by adding more allegations about supposed "misrepresentations" by Apple, because Apple did not make representations about the Toast Plus app specifically. Regardless, such claims would still depend on third-party content.

First, there is no set of allegations about the Toast Plus app that could render "false or misleading" Apple's statements about the App Store as a whole, particularly when Apple expressly disclaimed a warranty and waived liability for losses arising from or relating to use of third-party apps. Second, even if Plaintiffs could somehow allege a misrepresentation, Section 230 would still bar their claims, because their claims would still "at bottom, depend[] on [the] third party's content, without which no liability could have existed." *Lemmon*, 995 F.3d at 1094. If the "spoofing" app had different content—in particular, if its content were honest about the developer's intentions—then "no liability could have existed." *Id.*; *see* p.22, *supra.*

Section 230 and Apple's Terms thus each foreclose Plaintiffs' effort to hold Apple liable for losses they suffered as a result of the Toast Plus app. Plaintiffs cannot amend the Complaint in a way that would avoid this pleading problem as they allege no harms that are independent of that third-party content. Because Plaintiffs could not plead any conceivable facts that could overcome those multiple threshold legal barriers, amendment would be futile. *See, e.g.*, *Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) ("Plaintiffs have not shown that any new factual allegations could alter these conclusions based on settled precedent."). Accordingly, the district court properly dismissed the Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.

Respectfully submitted,

*/s/ Mark A. Perry*

Mark A. Perry
Zachary D. Tripp
Crystal L. Weeks
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW
Washington, DC 20036
(202) 682-7000
mark.perry@weil.com

Daniel M. Lifton
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

October 2, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this brief complies with the word limit of Circuit Rule 32-1 because it contains 12,644 words, excluding the portions exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Mark A. Perry*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
mark.perry@weil.com

October 2, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Mark A. Perry

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
mark.perry@weil.com

October 2, 2023